IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CAREY DALE GRAYSON, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| BILLY SHARP, Acting Commissioner, ) | NO. 2:12-cv-00316-WKW-CSC |
| Alabama Dept. of Corrections, ) | |
| in his official capacity, ) | |
| ) | DEATH PENALTY CASE |
| WALTER MYERS, Warden, ) | NO EXECUTION DATE SET |
| Holman Correctional Facility, ) | |
| in his official capacity, ) | |
| ) | |
| OTHER UNKNOWN ) | |
| EMPLOYEES AND AGENTS ) | |
| OF THE ALABAMA ) | |
| DEPT. OF CORRECTIONS, ) | |
| in their official capacities, ) | |
| ) | |
| Defendants. ) | |

**FIRST AMENDED COMPLAINT**

1. Plaintiff, Carey Dale Grayson, is an Alabama death row inmate. Grayson brings this action pursuant to 42 U.S.C. § 1983 for violations and threatened violations of his right to be free of cruel and unusual punishment under the Eighth Amendment to the United States Constitution and his right to the equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

2. Alabama employs lethal injection as its default method of execution.[1] Defendants intend to execute Grayson using a lethal injection scheme that was copied from another state[2] after they ran

---

[1] Ala. Code § 15-18-82.1(a) (1975).
[2] Exhibit A, Motion to Set Execution Date, p. 2.

1

out of the drug necessary to carry out executions using the previous scheme. This scheme presently employs three drugs, but it can be changed at any moment at the whim of Defendants.[3] In addition, the scheme contains a consciousness assessment that is performed inconsistently by untrained individuals.

## JURISDICTION AND VENUE

3. Jurisdiction over this matter arises under 42 U.S.C. § 1983, 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

4. Venue is appropriate in the Middle District of Alabama under 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff, Carey Dale Grayson, is a United States citizen and a resident of the State of Alabama. He is currently a death-sentenced inmate under the supervision of Defendants.

6. Defendant Billy Sharp is the Acting Commissioner of the Alabama Department of Corrections.

7. Defendant Walter Myers is the Warden of Holman Correctional Facility in Atmore, Alabama, where Grayson is currently incarcerated and where Alabama conducts its executions. Defendant Myers is also, by statute, Grayson's executioner, unless he designates someone else to perform that duty.[4] One of Warden Myers' predecessors was responsible for overseeing the consciousness assessment that is supposed to be performed in all executions.[5]

---

[3] As a result, using the term "protocol" to describe Alabama's lethal injection scheme is a misnomer. Merriam-Webster's Online Dictionary defines "protocol" in this connection as "a detailed plan of a scientific or medical experiment, treatment or procedure." http://www.merriam-webster.com/dictionary/protocol. It is axiomatic that a procedure subject to change at any time is not a plan, but merely a non-binding suggestion.

[4] Ala. Code § 15-18-82(c) (1975).

[5] Exhibit B, Evidentiary Hearing at 51, *Arthur v. Thomas*, No. 2:11-cv-438-WKW (M.D. Ala. Oct. 18,

8. Unknown employees and agents of the Alabama Department of Corrections are involved in the development and carrying out of executions in Alabama. Grayson does not know and cannot reasonably ascertain the identities or qualifications of these persons because Defendants refuse to make their names, positions or qualifications available to him.

9. All defendants are being sued in their official capacities. The named defendants are citizens of the United States and Alabama.

10. There is a real and justiciable case or controversy between the parties.

11. On information and belief, the Defendants and the Alabama Department of Corrections have adopted written and confidential procedures for administering capital punishment by lethal injection. Defendants, in pleadings filed with the Alabama Supreme Court on September 11, 2014, indicated that they have such written procedures.[6]

12. According to those documents, the new lethal injection scheme uses midazolam, a sedative that is not approved by the Food and Drug Administration for use as an anesthetic,[7] as the anesthetic agent that would be necessary to render Alabama's scheme constitutional. The scheme then allegedly requires an injection of rocuronium bromide, a paralytic, followed by an injection of potassium chloride. Grayson is unaware if Defendants actually possess any of these drugs.

13. Grayson challenges the constitutionality of Alabama's recently revised lethal injection

---

2012). The transcript of the evidentiary hearing held on October 18-19, 2012, in *Arthur v. Thomas* is attached as Exhibit B and Exhibit C to this complaint. The transcript of the first day of the hearing is attached to this complaint as Exhibit B. The transcript of the second day of the hearing is attached to this complaint as Exhibit C.

[6] Exhibit A.

[7] Midazolam was approved for use by the FDA in 2000. http://www.accessdata.fda.gov/drugsatfda_docs/appletter/2000/75154ltr.pdf. It is a sedative used to produce sleepiness or drowsiness before surgery. It is not an anesthetic or an analgesic.

procedures under 42 U.S.C. § 1983. This lawsuit does not challenge the fact of Grayson's conviction or his death sentence.

14. Upon information and belief, there is no administrative grievance process available at Holman Correctional Facility for Grayson or other death row inmates to challenge the procedures to be employed during their executions.

15. Absent judicial intervention, Grayson will be executed pursuant to Defendants' arbitrary and capricious lethal injection procedures. There is, then, a justiciable case or controversy regarding the unconstitutionality of these lethal injection procedures, the unnecessary risk of pain and suffering inherent in the procedures, Defendants' secrecy surrounding the procedures, and their unfettered discretion to change the lethal injection procedures.

## BACKGROUND

### A. Procedural History

16. Grayson was convicted of capital murder in the Jefferson County Circuit Court and sentenced to death on March 8, 1996.

17. Grayson's conviction and sentence were affirmed throughout the state courts. That process was completed on May 19, 2006.[8]

18. Grayson timely filed a petition for writ of habeas corpus in the Northern District of Alabama, which denied relief on September 29, 2009.[9] Grayson timely sought a certificate of appealability, which the District Court denied on July 19, 2010. Grayson timely filed an application for a certificate of appealability from the Eleventh Circuit Court of Appeals, which denied the

---

[8] *Ex parte Grayson*, No. 1050612 (Ala. May 19, 2006) (unreported).
[9] *Grayson v. Allen*, No. 2:06-01444-CV-RDP-RRA (N.D. Ala. 2009) (unreported).

application on October 13, 2010.

19. Grayson timely petitioned the United States Supreme Court for a writ of certiorari, which was denied on October 3, 2011.

20. On October 12, 2011, the State of Alabama moved the Alabama Supreme Court to set an execution date for Grayson. On February 22, 2012, the Alabama Supreme Court issued an order setting Grayson's execution date for April 12, 2012. On April 3, 2012, Grayson filed a motion to vacate his execution date on the basis of the Eleventh Circuit's remand of *Arthur v. Thomas* for factual development on the question of whether Alabama made a significant change to Alabama's execution procedures. On April 9, 2012, the Alabama Supreme Court vacated his execution date until further order of that court.

### B. Alabama's Lethal Injection Protocol

21. Upon information and belief, Defendants' execution protocols for lethal injection have historically used a series of three drugs, administered sequentially, to attempt to achieve first anesthesia, then paralysis, and finally death by cardiac arrest.

22. From April 26, 2011, until September 10, 2014, executions were conducted by successive injections of pentobarbital, pancuronium bromide and potassium chloride.[10]

23. On September 11, 2014, the State filed a motion asking the Alabama Supreme Court to set an execution date for nine death-sentenced inmates. In those pleadings, the State disclosed that, the day before it filed the motions, Defendants changed two of the three drugs in its execution protocol.[11]

---

[10] Exhibit B, pp. 105-06; Exhibit C, p. 6.
[11] Exhibit A.

5

24. The State pleaded that Alabama's lethal injection protocol now includes midazolam, rocuronium bromide, and potassium chloride.[12]

25. The first drug, midazolam, is to be given in a 500mg bolus, which "is meant to serve as an anesthetic."[13] Midazolam is not approved by the Food and Drug Administration for use as an anesthetic, but as an anesthetic adjunct.[14]

26. The second drug, rocuronium bromide, is a neuromuscular blocker, which is to say it causes paralysis. It is normally intended for use in fully anaesthetized patients to allow ease of intubation.[15] Here, though, the injection of rocuronium bromide does not actually aid the execution; it simply makes the execution appear more humane to on-lookers by stifling completely the condemned inmate's movement.[16]

27. The final drug, potassium chloride, disrupts the normal electrical activity of the heart and induces cardiac arrest by stopping the heart from pumping blood. Potassium chloride traveling in the bloodstream from the site of injection towards the heart causes a burning sensation as it moves through the body destroying the internal organs. Absent complete anesthesia, the injection of potassium chloride causes excruciating pain that is agonizing for the recipient.[17] The inmate must be in a deep level of anesthesia before being given this substance to ensure that he does not experience

---

[12] Exhibit A, p. 2.
[13] *Id.*
[14] PubMed Health, *Midazolam* (Feb. 1, 2015), http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0011217/?report=details.
[15] Physicians' Desk Reference, p. 2299 (2001).
[16] *Baze v. Rees*, 553 U. S. 35, 71 (2008) (Stevens, J., concurring in judgment) (noting that the use of a paralytic "masks any outward sign of distress").
[17] *Baze*, 553 U.S. at 53 ("It is uncontested that, failing a proper dose of sodium thiopental that would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and pain from the injection of potassium chloride").

that horrific pain.[18]

28. In 2007, Alabama introduced a consciousness test into its execution protocol.[19]

29. The 2007 consciousness test is conducted by a correctional officer. It consists of: 1) calling the inmate's name, 2) flicking the inmate's eyelid, and 3) pinching the inmate's arm.[20] It is conducted by one person who is not trained on how to conduct the test.[21] There is also no training on how to assess the inmate's responsiveness.

30. Upon conclusion of those three tests, if and when the officer judges that the inmate is at an anesthetic depth of consciousness, the officer conducting the assessment is supposed to step away from the inmate.[22] Only then does the executioner (the Warden or his designate) administer the second drug.[23]

31. The normal training one receives to be able to assess anesthetic depth is four years of medical school, one year of internship in internal medicine, and three years of training as an anesthesiologist.[24] It is typically at the end of the three years of training as an anesthesiologist that a resident is allowed to assess anesthetic depth on his or her own.[25] On information and belief, such training is not provided to Department of Corrections personnel who are involved in carrying out the execution protocol.

32. It is uncertain if this test, or indeed if any test, is in the present protocol. The pleading

---

[18] Exhibit B, p. 106.
[19] Exhibit B, pp. 52-53. Grayson is unaware of whether the same consciousness test is in the present protocol.
[20] Exhibit B, p. 57.
[21] Exhibit B, pp. 58-59.
[22] Exhibit B, p. 61.
[23] Exhibit B, p. 69.
[24] Exhibit B, p. 169.
[25] Exhibit B, p. 170.

filed with the Alabama Supreme Court states that Defendants' latest protocol is "virtually identical" to Florida's execution protocol. The pleading does not detail the similarities and differences.[26]

33. Upon information and belief, there is insufficient training given to the execution team members designated to implement the consciousness test to the death sentenced inmate.

34. Training, experience and supervision are essential to ensuring that an execution will be humane and comport with the requirements of the Eighth Amendment. Upon information and belief, Defendants do not adequately ensure that the individuals responsible for inducing and maintaining an anesthetic depth of unconsciousness are credentialed, licensed and proficient in the knowledge, skills and procedures necessary to establish an appropriate level of anesthesia throughout the lethal injection process.

### C. Use of midazolam creates a substantial risk that an inmate will experience pain from the subsequent injections of rocuronium bromide and potassium chloride.

35. The proper functioning of the first drug in a three-drug execution protocol is crucial to ensuring that execution procedures do not subject an inmate to an "objectively intolerable risk of harm."[27] In *Baze*, petitioners conceded that if Kentucky's protocol (sodium thiopental, then pancuronium bromide, then potassium chloride) was followed precisely, it would result in a humane execution because the proper injection of sodium thiopental "eliminates any meaningful risk that a prisoner would experience pain from the subsequent injections of pancuronium and potassium chloride."[28]

36. Midazolam is not approved by the FDA for use as an anesthetic. As noted above,

---

[26] Exhibit A, p. 3.
[27] *Baze*, 553 U.S. at 50.
[28] *Id.* at 49.


midazolam has been approved by the FDA as a sedative-hypnotic. Use of midazolam renders the protocol unconstitutional because, even if the protocol is followed precisely, there is a substantial risk that the death-sentenced inmate would not be anesthetized. Further, no one would ever know this because the second drug, rocuronium bromide, paralyzes the inmate.

37. The use of midazolam in executions has been more than problematic. In Arizona, Ohio and Oklahoma, painful executions have resulted from the use of midazolam. These reactions were seen because no paralytic was used in the executions.

38. In Ohio, on January 16, 2014, the execution of Dennis McGuire went very badly. Ohio experimented on Mr. McGuire with a new execution protocol of midazolam and hydromorphone. Mr. McGuire's execution lasted 25 minutes, and he gasped repeatedly throughout the process. An expert stated that Mr. McGuire suffered "true pain and suffering" during his execution.[29]

39. After this execution, Ohio changed its protocol[30] and a federal judge ordered all Ohio executions stayed until January 15, 2015, because of "the continuing need for discovery and necessary preparations related to the adoption and implementation of the new execution protocol."[31] Ohio has since determined that it will no longer use midazolam in its executions.[32]

40. Oklahoma conducted a bungled midazolam execution on April 29, 2014. Clayton Lockett's execution lasted 43 minutes. His was the first execution in Oklahoma to use midazolam and hydromorphone. Mr. Lockett moved, spoke, and attempted to sit up, all after the execution

---

[29] Alan Johnson, *Dennis McGuire's execution was not 'humane', doctor says*, The Columbus Dispatch, Aug. 13, 2014.
[30] *Id.*
[31] Stay Order, *In re Ohio Execution Protocol Litig.*, No. 2:11-cv-01016-GLF-MRA (S.D. Ohio Aug. 8, 2014), ECF No. 494.
[32] *Ohio's execution drug supply expires April 1*, Cleveland.com (Jan. 8, 2015), http://www.cleveland.com/metro/index.ssf/2015/01/ohios_execution_drug_supply_ex.html.

team said he was unconscious. A witness to the execution stated that, after Lockett was said to be sedated, he "lurched forward against his restraints, writhing and attempting to speak."[33]  Mr. Lockett then had a heart attack and died. The Governor of Oklahoma ordered an investigation into Mr. Lockett's execution.[34]  That review led to numerous recommendations for changes to Oklahoma's execution protocol and execution chamber.

41. On July 23, 2014, in Arizona, Joseph Wood was injected with an experimental two-drug protocol of midazolam and hydromorphone. He was seen gasping for air over 600 times during the execution, which took almost two hours.[35]  He was injected with Arizona's experimental two-drug protocol fifteen times.[36]

42. The Governor of Arizona ordered an investigation of that evening's events.[37]

**D. The executions of Eddie Powell and Jeff Land indicate that Defendants do not follow their own execution protocol, particularly in the consciousness assessment.**

43. At the *Arthur* hearing, Alabama's expert, Dr. Mark Dershwitz, testified that the consciousness assessment consists of three graded stimuli: stating the person's name, stroking their eyelashes, and finally a pinch on the arm.[38]

---

[33] Katie Fretland, *Clayton Lockett writhed and groaned*, The Guardian (April 30, 2014), http://www.theguardian.com/world/2014/apr/30/clayton-lockett-oklahoma-execution-witness.
[34] Molly Hennessy-Fiske, *Botched execution: Oklahoma governor pledges independent review*, L.A. Times, April 30, 2014.
[35] Mark Berman, *Arizona execution lasts nearly two hours*, The Washington Post, July 23, 2014, http://www.washingtonpost.com/news/post-nation/wp/2014/07/23/arizona-supreme-court-stays-planned-execution/.
[36] M. Alex Johnson, *Arizona Needed 15 Drug Doses to Execute Joseph Wood*, NBC News (Aug. 1, 2014), http://www.nbcnews.com/storyline/lethal-injection/arizona-needed-15-drug-doses-execute-joseph-wood-n171071.
[37] *See* Cindy Carcamo, *Arizona to probe why killer took 2 hours to die after lethal injection,* L.A. Times, July 24, 2014.
[38] Exhibit C, p. 16.

44. Witnesses to the execution in Alabama of Eddie Powell on June 16, 2011, did not observe the third graded stimuli described by Dr. Dershwitz.[39]

45. A witness to Jeff Land's execution in Alabama in 2010, which was three years after the graded stimuli were first included in the protocol, testified that he did not see the correctional officer perform the third graded stimuli, the so-called pinch test.[40]

46. Pinching[41] an inmate's arm is the most painful and therefore the most likely stimuli among the three provided for in Alabama's protocol to reliably assess anesthetic depth.[42]  Failure to pinch the inmate's arm prior to paralyzing the inmate and injecting potassium chloride makes the assessment of anesthetic depth incomplete and puts the inmate at a substantial risk of serious harm.[43]

47. There is no compelling reason for "selectively introducing risk into some executions but not others."[44]  In failing to ensure that all executions contain all the graded stimuli contained in the State's expert's description of the protocol, Defendants selectively introduce risk into executions.

48. Defendants' failure to abide by their own purported procedural safeguards to assess anesthetic depth violates Grayson's right to Equal Protection under the United States Constitution.

---

[39]  Exhibit B, p. 259.
[40]  Exhibit B, p. 304.
[41]  The phrase "pinch test" is an understated misnomer. In fact, upon information and belief, in the normal, medical context, the "pinch test" is conducted using medical clamps that exert great force (and great pain) upon the patient. This great level of force is necessary for this consciousness test to meaningfully ascertain whether the patient is at the appropriate depth of anesthetic unconsciousness.
[42]  Exhibit B, pp. 170-71.
[43]  *Baze*, 553 U.S. at 52.
[44]  *Cooey v. Kasich*, 801 F. Supp. 2d 623, 653 (S.D. Ohio 2011).

## FIRST CAUSE OF ACTION

**Violation of Grayson's right to be free from cruel and unusual punishment pursuant to the Eighth Amendment to the United States Constitution.**

49. Grayson repeats and realleges paragraphs 1 through 48 as though fully set forth herein.

50. The Eighth Amendment guarantees every person the right to be free from cruel and unusual punishment. A method of execution causes cruel and unusual punishment if it creates a "substantial risk of serious harm."[45] Although it is possible to conduct executions in a constitutionally compliant manner, Defendants have chosen not to do so.

51. Defendants are acting under color of Alabama law in undertaking to execute Grayson by lethal injection through (i) the use of an insufficient, improperly designed and improperly administered procedure for inducing and maintaining loss of consciousness and loss of sensation prior to execution, and (ii) the use of chemicals that cause severe pain in the process of causing death, in conjunction with chemicals used specifically and for no other purpose than to mask that severe pain, such that there is a substantial risk that Grayson will suffer serious harm, in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

52. The Eighth Amendment requires that state conduct surrounding capital punishment not be arbitrary and capricious[46] and that such conduct comports with "evolving standards of decency that mark the progress of a maturing society."[47]

53. Defendants have repeatedly and arbitrarily altered their protocol with no indication of

---

[45] *Baze*, 553 U.S. at 55.
[46] *Furman v. Georgia*, 408 U.S. 238, 255 (1972).
[47] *Atkins v. Virginia*, 536 U.S. 304, 311 (2002).

12

how that decision was arrived at, who arrived at it, and whether anyone was consulted before the decision was made.

54. In *Baze*, the Supreme Court rejected Plaintiff's argument that Kentucky's three drug protocol was unconstitutional because there was an alternative -- a one-drug protocol.[48] The reason the Court rejected this claim was that "the Commonwealth's continued use of the three-drug protocol cannot be viewed as posing an 'objectively intolerable risk' when no other State has adopted the one-drug method and petitioners proffered no study showing that it is an equally effective manner of imposing a death sentence."[49]

55. Those facts have now changed. As of the filing of this complaint, of the 32 states that have the death penalty, eight have conducted executions with a single drug and five others have single-drug protocols but have not yet implemented them. The majority of executions that occurred in the United States in 2014 used single-drug protocols.[50] The first execution in 2015 was conducted with a single-drug protocol.[51] In addition, as detailed above, executions using Alabama's proposed first drug have been botched and resulted in serious harm.

56. Alabama's proposed method of execution creates a substantial risk of serious harm because midazolam is pharmacologically unable to conform to the constitutional requirements, and there is an effective alternative method of execution that does not require a paralytic or potassium chloride. Alabama's method of execution, on its face, violates Grayson's right to be free of cruel and

---

[48] *Baze*, 553 U.S. at 57.
[49] *Id.*
[50] Death Penalty Information Center, *Execution List 2014*, http://www.deathpenaltyinfo.org/execution-list-2014 (last visited Feb. 24, 2015).
[51] Death Penalty Information Center, *Execution List 2015*, http://www.deathpenaltyinfo.org/execution-list-2015 (last visited Feb. 24, 2015).

unusual punishment because it creates a substantial risk of serious harm.

## SECOND CAUSE OF ACTION

**Violation of Grayson's right to equal protection under the law pursuant to the Fourteenth Amendment of the United States Constitution.**

57. Grayson repeats and realleges paragraphs 1 through 48 as though fully set forth herein.

58. To establish a claim for relief under the Equal Protection Clause, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.[52]

59. Grayson has a fundamental right under the Fourteenth Amendment to the United States Constitution to be free from cruel and unusual punishment.[53] This right is violated when a state's execution team "negat[es] . . . precise procedural safeguards" or departs from core components of the execution process set forth in a written protocol.[54]

60. As described above, there is evidence that Defendants have materially deviated from their written execution protocol on more than one occasion, impermissibly burdening Grayson's right to be free from cruel and unusual punishment.

61. There is no compelling reason for "selectively introducing risk into some executions but not others."[55] In failing to ensure that all executions contain the graded stimuli allegedly included in the protocol, Defendants selectively introduced risk into executions.

---

[52] *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966) ("Where fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined.").
[53] *Cooey*, 801 F. Supp. 2d at 653.
[54] *Id.*
[55] *Id.*.

14

62. Because Defendants refuse to make their execution protocol available for review, it is possible that there have been other deviations from the core components of the protocol.

63. Deviations from the lethal injection protocol burden Grayson's fundamental right to be free from cruel and unusual punishment "by negating . . . precise procedural safeguards."[56]  Not only is there no compelling reason for Defendants' failure to adhere to their own alleged protocol, but such a deviation also cannot pass rational basis review.[57]  Defendants' failure to adhere to the procedural safeguards to assess anesthetic depth violates Grayson's right to Equal Protection under the United States Constitution.

## PRAYER FOR RELIEF

For the above reasons, Grayson respectfully requests this Court to:

A. Declare that Alabama's three-drug protocol as it is presently constituted is unconstitutional under *Baze v. Rees*;

B. Order Defendants to disclose to Grayson and his counsel the lethal injection protocol that will be used during Grayson's execution at least 90 days in advance of such execution without restriction as to its dissemination;

C. Enter a declaratory judgment that Defendants' inadequate anesthesia and consciousness testing procedures violate Grayson's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and his rights to due process and equal protection under the Fourteenth Amendment;

D. Order that the Alabama Department of Corrections submit any proposed changes to the

---

[56] *Id.*

[57] *Id.* ("[m]ere pursuit of administrative convenience that risks flawed executions is not a legitimate state interest.").

execution protocol to the Court immediately upon making them;

E. Order that the Alabama Department of Corrections disclose to Grayson and his counsel information about the drugs that will be used to kill him, including, but not limited to: what they are, when they were purchased, where they were purchased from, and their National Drug Code identifying number;

F. Enjoin Defendants from executing Grayson with inadequate anesthesia and execution procedures that violate Grayson's right to be free from cruel and unusual punishment under the Eighth Amendment and his rights to due process and equal protection under the Fourteenth Amendment;

G Grant any further relief as it deems just and proper.

Respectfully submitted,

/s/ John Anthony Palombi
John Anthony Palombi
W. Marcus Ermine
Assistant Federal Defenders
Federal Defenders, Middle District of Alabama
817 South Court Street
Montgomery, Alabama 36104
Phone: (334) 834-2099
E-mail: John_Palombi@fd.org
KY Bar Code: 86784
GA Bar Number: 321851

Counsel for Carey Dale Grayson, Plaintiff

**CERTIFICATE OF SERVICE**

This Amended Complaint was filed through the CM/ECF system on March 6, 2015. Service on counsel for Defendants will be effectuated through that system.

/s/John Anthony Palombi
Counsel for Carey Dale Grayson

16