IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CAREY DALE GRAYSON, | ) | |
| DEMETRIUS FRAZIER, | ) | |
| DAVID LEE ROBERTS, | ) | |
| ROBIN DION MYERS, and | ) | |
| GREGORY HUNT, | ) | CASE NOS. 2:12-CV-0316-WKW |
| | ) | 2:13-CV-0781-WKW |
| Plaintiffs, | ) | 2:14-CV-1028-WKW |
| | ) | 2:14-CV-1029-WKW |
| CHRISTOPHER E. BROOKS, | ) | 2:14-CV-1030-WKW |
| | ) | |
| Intervenor Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFERSON S. DUNN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Intervenor Plaintiff Christopher E. Brooks, a death-row inmate, is in the custody of the Alabama Department of Corrections ("ADOC") awaiting his execution scheduled for January 21, 2016. On November 24, 2015, Brooks intervened in this consolidated action (the "Midazolam Litigation") filed under 42 U.S.C. § 1983. He challenges the constitutionality of Alabama's method of execution, alleging that Alabama's current three-drug lethal injection protocol creates a substantial risk of serious harm in violation of the Eighth Amendment to

the United States Constitution.  (Doc. # 72.)  This matter is before the court on Brooks's Emergency Motion to Stay Execution (Doc. # 81), which has been fully briefed and is ripe for review.[1]

Having carefully considered the motion, the parties' respective arguments, and the applicable law, the court will deny Brooks's emergency motion to stay based upon his unnecessary delay and a failure to demonstrate a substantial likelihood of success on the merits.  His emergency motion to stay his execution comes too late in the litigation day.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 1993, Brooks was convicted of capital murder and sentenced to death for the murder of Ms. Jo Dean Campbell in December of 1992.  *Brooks v. State*, 695 So. 2d 176, 178 (Ala. Crim. App. 1996).  His death sentence was affirmed on direct appeal.  *Ex parte Brooks*, 695 So. 2d 184 (Ala. 1997).  On October 6, 1997, the United States Supreme Court denied Brooks's petition for a writ of certiorari. *Brooks v. Alabama*, 522 U.S. 893 (1997).

Brooks then collaterally attacked his conviction by filing a petition pursuant to Rule 32 of the Alabama Rules of Criminal Procedure.  In 2001, the trial court

---

[1] Defendants also have moved to dismiss Brooks's Intervenor Complaint.  (Doc. # 73.) This opinion does not take up that motion, but some of the arguments in support of and in opposition to the motion to dismiss are inextricably intertwined with the arguments in support of and in opposition to the motion to stay execution.  The arguments on the motion to dismiss, therefore, are included for context.

denied that petition.  *Brooks v. State*, 929 So. 2d 491 (Ala. Crim. App. 2005).  The Alabama Court of Criminal Appeals affirmed that denial, *id*., at 512, and the Alabama Supreme Court denied certiorari.  *Ex parte Brooks*, No. 1041729 (Ala. Oct. 21, 2005).

In 2005, Brooks filed a habeas petition under 28 U.S.C. § 2254; it was denied in 2009.  *Brooks v. Campbell, et al.*, No. 2:05cv02357 (N.D. Ala. Mar. 31, 2009 (Doc. # 39).  That denial was affirmed on appeal.  *Brooks v. Comm'r, Ala. Dep't of Corrs.*, 719 F.3d 1293 (11th Cir. 2013).  On March 24, 2014, the Supreme Court denied Brooks's petition for a writ of certiorari.  *Brooks v. Thomas*, 134 S. Ct. 1541 (2014).

On September 10, 2014, the ADOC amended its execution protocol in two respects:  (1) it substituted midazolam hydrochloride for pentobarbital as the first drug administered in its three-drug, lethal-injection sequence, and (2) it substituted rocuronium bromide for pancuronium bromide as the second drug to be administered.  (Doc. # 72-3.)  The following day, September 11, 2014, the State of Alabama moved the Alabama Supreme Court to set execution dates for several death-row inmates, including Brooks.  His execution date was initially set for May 21, 2015.  In response, Brooks moved to stay his execution, pending the Supreme Court's then-pending decision in *Glossip v. Gross*, No. 14-7955, a case concerning

the constitutionality of the use of midazolam in lethal-injection executions in Oklahoma.  Because Alabama had not yet executed anyone under its newly revised execution protocol using midazolam in the drug sequence, the outcome of *Glossip* had implications for Alabama's three-drug execution protocol as well.  The State of Alabama did not oppose the motion to stay.  On March 23, 2015, the Alabama Supreme Court stayed Brooks's execution date.

On June 29, 2015, the Supreme Court issued its decision in *Glossip v. Gross*, 135 S. Ct. 2726 (2015).  *Glossip* was litigated on a motion for preliminary injunction.  *See id.* at 2736–37.  The *Glossip* Court held that the plaintiffs, a number of Oklahoma death-row inmates, failed to establish a likelihood of success on the merits of their claim that the use of midazolam, as the first drug in Oklahoma's three-drug execution protocol, violates the Eighth Amendment ban against cruel and unusual punishment.  *Id.* at 2736–46.

Post-*Glossip*, on September 24, 2015, the State again moved the Alabama Supreme Court to set an execution date for Brooks.  (Doc. # 72-4.)  Brooks had no active litigation pending at the time.

Forty days later, on November 2, 2015, while the State's motion to set an execution date for Brooks was pending before the Alabama Supreme Court, Brooks moved to intervene in this action pursuant to Fed. R. Civ. P. 24(b).  On

November 23, 2015, after briefing and Defendants' non-opposition to the motion to intervene, the motion to intervene was granted.  (Doc. # 69.)  On the same day, the Alabama Supreme Court granted the State's motion and set Brooks's execution for January 21, 2016.  (Doc. # 81-4.)  The next day, November 24, 2015, Brooks filed his Intervenor Complaint.  (Doc. # 72.)  On December 1, 2015, Defendants moved to dismiss (Doc. # 73), and Brooks responded on December 8, 2015 (Doc. # 83).  On December 4, 2015, Brooks filed an Emergency Motion for Stay of Execution (Doc. # 81), to which the Defendants have responded.  (Doc. # 88.)  A tentative hearing date of December 18, 2015, was set for the emergency motion, along with a truncated briefing schedule to be completed before December 18. (Doc. # 75.)  Upon review of the submissions on the motion to stay execution, and for reasons more fully explained herein, the hearing was cancelled.  (Doc. # 91.)

Brooks's intervention is into a group of consolidated cases called the "Midazolam Litigation" (*see* Doc. # 59) brought by five other inmates identified in the style of this case.  Final hearing is set for April 19–22, 2016. (Doc. # 67.) Naturally, Brooks wants in the game, and he is of late on the roster.  Indeed, the pendency of that final hearing in April 2016 has been identified as a reason to stay his execution.

Also pending before the undersigned is the § 1983 *Arthur* litigation, infamous for a rich (some say sordid) litigation history. *See Arthur v. Myers, et al.*, No. 2:11cv438 (M.D. Ala. 2011). After years of litigation switchbacks worthy of a dirt road in Eastern Kentucky, and five execution dates (*see* Doc. # 186 at 8, n.4), Arthur now has challenged the current protocol and offered execution alternatives. In 2012, this court, another judge sitting, was directed by the Eleventh Circuit to have a hearing on a prior three-drug protocol involving the switch from sodium thiopental to pentobarbital to determine whether the switch to pentobarbital was a significant change in the protocol that restarted the statute of limitations for Arthur. *See Arthur v. Thomas*, 674 F.3d 1257, 1263 (11th Cir. 2012). Before that final hearing could be held, on September 10, 2014, the State changed the protocol yet again, to midazolam as the first drug, due to the unavailability of sodium thiopental and pentobarbital (Doc. #190-2), and Arthur amended his complaint accordingly, incorporating the change to midazolam. (Doc. # 267.) The final hearing in *Arthur* is set to begin January 12, 2016, (Doc. # 264), and most of the issues Brooks raises are likely to be addressed in a full-blown trial in the *Arthur* case. Brooks claims the potential benefit of Arthur's proceedings, proceedings to which he is not a party and into which he did not intervene.

Brooks is the caboose on a long litigation train, which ironically appears to be running in reverse for him.  Brooks, unlike Arthur with five execution dates, has had only two execution dates: one pre-*Glossip* and one post-*Glossip*, which is the present January 21, 2016 execution date.  However, the illusion of the train running in reverse toward its final destiny is his doing.

## II. POSITIONS OF THE PARTIES

**A.**     **Brooks's Intervenor Complaint**

In his Intervenor Complaint, filed on November 24, 2015, Brooks alleges that Alabama's current execution protocol, involving the injection of a series of three drugs, midazolam, rocuronium bromide, and potassium chloride, in that sequence, is unconstitutional.  He claims that midazolam, the first drug to be administered, will not properly anesthetize him so as to prevent him from feeling an "unconstitutional level of pain" (Doc. # 72 at 1), associated with the injection of the other two drugs that will kill him.  On this premise, Brooks claims that Defendants' current execution protocol creates a "substantial risk of serious harm," *Baze v. Rees*, 553 U.S. 35, 50 (2008) (plurality opinion), and violates his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

Brooks recognizes that in order to maintain his challenge to Alabama's method of execution, he must "identify a known and available alternative method of execution that entails a lesser risk of pain." *Glossip*, 135 S. Ct at 2731. To comply with *Glossip*, Brooks claims that there are alternative methods of execution available to Defendants that significantly reduce the risk of an unconstitutional level of pain. For instance, he claims that numerous states have switched from a two- or- three-drug protocol to a one-drug protocol, and that since January 1, 2014, in other states, nearly forty inmates have been executed using "a single bolus of pentobarbital, making it the most common method of execution in the United States." (Doc. # 72 at 14.) As alternatives to pentobarbital, Brooks also proposes the use of sodium thiopental and midazolam as viable options for single-drug protocol executions.[2] Brooks acknowledges that there may be availability problems associated with pentobarbital and sodium thiopental, but he maintains that midazolam is known to Defendants and is readily available for executions.

---

[2] Brooks objects to *Glossip's* requirement that he must propose execution alternatives in order to challenge a method of execution that he contends is unconstitutional. Brooks emphasizes that he is not waiving any potential claims that his rights could be violated by the maladministration of the alternatives he proposes. Brooks states that he is merely pleading, as the plaintiffs did in *Baze*, that *if* his proposed execution alternatives work properly and are administered correctly, such executions will not create a risk of an unconstitutional level of pain. In this tepid pleading approach, Brooks fails to meet the pleading requirements of *Glossip* as to the alternative method element of his constitutional challenge. Brooks's position is also in denial of the inevitability of execution confirmed by *Glossip*.

Brooks requests a declaratory judgment that Alabama's current three-drug execution protocol is unconstitutional under *Baze* and *Glossip*, and that the court enjoin Defendants from executing him with inadequate anesthesia and execution procedures that violate his Eighth Amendment right to be free from cruel and unusual punishment.

**B.**   **Brooks's Motion for a Stay of Execution**

In response to the Alabama Supreme Court's setting Brooks's execution date for January 21, 2016, Brooks filed an emergency motion to stay his execution.  He contends that because he has a pending challenge to the State's method of execution, this court is authorized under the All Writs Act, 28 U.S.C. § 1651, to stay his execution.  Reciting the familiar requirements of equitable relief, Brooks claims that he has a substantial likelihood of success on the merits, that a stay is necessary to prevent the irreparable harm of execution by an unconstitutional means, and that the harm of denying a stay outweighs the harm of granting a stay. Brooks further contends that granting a stay is in the public interest because it will permit the constitutionality of Alabama's execution protocol to be litigated in an orderly manner and resolved on the merits.

**C.**   <u>**Defendants' Response to Brooks's Motion for a Stay of Execution**</u>

Defendants oppose Brooks's motion to stay his execution, contending that he has failed to establish a likelihood of success on the merits, that his own inequitable conduct created his need to seek a stay of execution, and that the issuance of a stay would be adverse to the public interest.  As to Brooks's inequitable conduct, Defendants assert that Brooks has known since September 2014 that the ADOC had changed its execution protocol, has known of his imminent execution since March 10, 2015, when the Alabama Supreme Court set his first execution date, and has known since September 24, 2015, that the State was again requesting the Alabama Supreme Court to set an execution date for him, yet he waited until November 2, 2015, to initiate his challenge to the State's current execution protocol.   Defendants submit that because of Brooks's unreasonable and inexcusable delay in seeking to intervene in this action, both his request for injunctive relief and his request for the equitable remedy of a stay of execution are barred by the doctrine of laches.  Defendants also point out that Brooks is in a different procedural posture than the other five plaintiffs in this action.  Each of the other inmates in this Midazolam Litigation is not accused of unreasonable delay, does not have a pending execution date, and is well into the discovery and preparation of his case for final hearing in April 2016.

10

### D.   __Defendants' Motion to Dismiss Brooks's Intervenor Complaint__

In response to Brooks's Intervenor Complaint, Defendants moved to dismiss for a number of reasons.  First, they contend that because of Brooks's inexcusable delay in intervening, his complaint should be dismissed based on the doctrine of laches.  Second, they submit that dismissal is appropriate under Fed. R. Civ. P. 12(b)(6), because the complaint was filed after the two-year statute of limitations had expired.  *See AVCO Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982) (party may seek dismissal based on statute-of-limitations defense pursuant to Rule 12(b)(6)).  Finally, they urge dismissal because Brooks has failed to state a claim for which relief can be granted in that he has not met the pleading standards required by *Glossip* and *Baze,* 553 U.S. at 52, to plead in Alabama a known, readily available, and implementable alternative drug that significantly reduces a substantial risk of unconstitutional pain.  (Doc. # 73.)

In the alternative to their motion to dismiss, Defendants, without conceding that Alabama's current three-drug injection protocol is unconstitutional, have consented to judgment of this court ordering the ADOC to execute Brooks by a lethal injection using only midazolam, one of the execution alternatives Brooks proposes.  (Doc. # 49 at 20.)  Defendants represent that they consent to judgment solely pursuant to the burden imposed on death-row inmates by *Baze* and *Glossip*

11

to present an execution alternative through § 1983 litigation.   With certain assurances from Brooks that he is fully aware of the alternative methods of execution outlined in the complaint filed on his behalf and that he consents to be executed by a one-drug protocol using only midazolam, Defendants request an order permitting the ADOC to accommodate Brooks's desire for an alternative method of execution instead of execution with the ADOC's current execution protocol.[3]   Defendants point out, however, that there has never been an execution in any state in which midazolam was the only drug used.[4]

---

[3] Pursuant to court Order, Defendants have provided to the court, under seal and for *in camera* review, a single-drug execution protocol using midazolam.   Defendants plead that sodium thiopental and pentobarbital are not available to the ADOC for purposes of lethal injection.

[4] Defendants' proposal to adopt the prisoner's stated alternative by consenting to judgment is wholly predictable as a strategy, but fraught with peril as a procedure.   One issue raised by the parties is whether the prisoner must affirmatively consent (the parties appear to agree that he must) and if so, how.   But the "offer" by the state invokes other fundamental concerns.   For instance, can the prisoner's case-in-chief be rendered irrelevant by this procedural tactic?   Logically, and in almost any other litigation setting, the answer is "yes."   When the parties consent to the same remedy, arguably there is no case or controversy; therefore, there is no Article III subject-matter jurisdiction.   But in execution litigation, if the usual were the rule, most cases would be disposed of by this tactic, which begs the question of why the charade?   Another tricky crossroad is:   Assuming consent is not required but the tactic is allowed, by what standard would a trial judge override the prisoner's objection?   And there is yet a third consideration:   How would a trial court implement a "consent execution" vis-à-vis the state's statutory procedure and right to set its own execution without federal interference?   What would that procedure look like?   The issues raised by the consent tactic deserve the attention of a court higher than this one.   Because of the time constraints, and because this case resolves on other grounds, the consent issue will be left for another day.

### E.  Brooks's Response to Defendants' Motion to Dismiss and Consent to Judgment

In his response to Defendants' motion to dismiss and consent judgment, Brooks takes issue with all Defendants' arguments for three reasons.  He counters that he did not unreasonably delay in filing his § 1983 challenge to Alabama's current execution protocol and that the change from pentobarbital to midazolam is a significant change that resets the statute-of-limitations clock.  He further retorts that his "offer" to use only a single drug, midazolam, is not tantamount to an offer to enter into a consent decree and that a consent decree cannot be forced on a party who does not agree to it.  Brooks submits that the motion to dismiss should be denied and that his case should remain on the same schedule for discovery and a final hearing as the other five plaintiffs in this consolidated Midazolam Litigation.

## III.  STANDARD OF REVIEW

The grant or denial of a stay of execution is within the district court's discretion.  *Muhammad v. Sec'y, Fla. Dep't of Corrs.*, 739 F.3d 683, 688 (11th Cir. 2014).  A stay "is not available as a matter of right," even where execution is imminent. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).  Rather, "a stay of execution is an equitable remedy[,]" and "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.*; *see also Thompson v. Wainwright*, 714 F.2d 1495, 1506

(11th Cir. 1983).  Both the State and the victims of crime "have an important interest in the timely enforcement of a sentence."  *Hill*, 547 U.S. at 584.

"A motion for a stay filed by a death row inmate who challenges the method of his execution is treated the same as any other motion for a stay."  *Powell v. Thomas*, 784 F. Supp. 2d 1270, 1273 (M.D. Ala. 2011), *aff'd*, 641 F.3d 1255 (11th Cir. 2011).  A "death row inmate is afforded no preferential treatment by his filing of a motion to stay, and all requirements for a stay must be satisfied."  *Id.*  The requirements mirror those applicable to obtaining injunctive relief, meaning that before a court can issue a stay, it must determine whether the movant has shown (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would not be adverse to the public interest.  *Powell*, 641 F.3d at 1257; *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014).  "[T]he movant must clearly carry the burden of persuasion in order for the court to grant a stay."  *Powell*, 784 F. Supp. 2d at 1274.

Finally, when a motion for a stay of execution is filed shortly before the scheduled execution, "'the extent to which the inmate has delayed unnecessarily in bringing the claim'" must be considered.  *Id.* (quoting *Nelson v. Campbell*, 541

U.S. 637, 649 (2004)).  That is because a "'strong equitable presumption' applies 'against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'"  *Id.* (quoting *Hill*, 547 U.S. at 584; *Nelson*, 541 U.S. at 650).

## IV. DISCUSSION

Brooks's motion for a stay of execution is due to be denied.  First, he has not shown a substantial likelihood of success on the merits.  At a minimum, he has failed to plead an available and feasible alternative method of execution, as required by *Glossip* and *Baze*, and a straightforward reading of his Complaint reveals that the Eighth Amendment claim is time-barred.  Second, he unreasonably delayed in bringing this lawsuit.  Third, the equities do not lie in Brooks's favor.

## A.   Substantial Likelihood of Success on the Merits

Like *Glossip*, the present case requires Brooks to establish a substantial likelihood that Alabama's "lethal injection protocol creates a demonstrated risk of severe pain and that the risk is substantial when compared to the known and available alternatives."  *Glossip*, 135 S. Ct. at 2737.  In lieu of Alabama's present three-drug execution protocol employing the injection of midazolam, rocuronium bromide, and potassium chloride, in that sequence, Brooks has identified a

midazolam, single-drug lethal injection as one such alternative method of execution. There is no issue as to the availability of midazolam for executions, and it is currently being used in other states as part of three-drug executions.[5] However, Brooks concedes that to date, an execution using a single-drug, midazolam-only protocol has not been used by any state. (Doc. # 72 at 17.) In briefing, Brooks attempted to amend his single-drug midazolam alternative execution procedure, claiming that for it to be constitutional, it must also (1) be arrived at "through the use of scientific evidence or consultation," (2) provide for the timing of the multiple doses of midazolam, if necessary, (3) provide for equipment to monitor breathing or heart rate, (4) provide for reversing the effects of a large dose of midazolam in the event a stay of execution is entered, (5) provide for how many injections will take place, and (6) provide for assessing the quality

---

[5] The *Glossip* Court noted:

> In October 2013, Florida became the first State to substitute midazolam for pentobarbital as part of a three-drug lethal injection protocol. Fernandez, Executions Stall As States Seek Different Drugs, N.Y. Times, Nov. 9, 2013, p. A1. To date, Florida has conducted 11 executions using that protocol, which calls for midazolam followed by a paralytic agent and potassium chloride. *See* Brief for State of Florida as *Amicus Curiae* 2–3; *Chavez v. Florida SP Warden*, 742 F.3d 1267, 1269 (C.A.11 2014). In 2014, Oklahoma also substituted midazolam for pentobarbital as part of its three-drug protocol. Oklahoma has already used this three-drug protocol twice: to execute Clayton Lockett in April 2014 and Charles Warner in January 2015.

135 S. Ct. at 2734.

of the IV lines.   (Doc. # 84 at 7–8.)   Because they arise in briefing, these challenges are not properly raised and will not be addressed.

The gist of Brooks's Eighth Amendment claim is that midazolam will not adequately render an inmate insensate to pain so as prevent the inmate from feeling the effects of the second and third drugs of the ADOC's three-drug protocol.  (Doc. # 72; Doc. # 81 at 4–5.)   He also contends that the ADOC's switch from pentobarbital to midazolam in its execution protocol was a "significant" or "substantial" change in the execution protocol.   Brooks begins with the premise that (1) pentobarbital, the first drug previously used in the lethal injection protocol, did not entail any risk that the inmate would not be rendered insensate to the effects of the second and third drugs in the execution protocol, and (2) it was *only* the switch to midazolam that created the unconstitutional risk that the inmate would not be insensate to the effects of the second and third drugs.   Prior to the switch to midazolam in September 2014, Brooks had not challenged the ADOC's method of execution.   Brooks has not shown a substantial likelihood of success on the merits for the following reasons.

### 1.   *Failure to Plead Available and Feasible Alternative*

In an attempt to comply with *Glossip*, Brooks has proposed alternative methods of execution involving one-drug protocols.   Pleading an alternative is a

"substantive element of an Eighth Amendment method-of-execution claim" that a prisoner must plead and prove.  135 S. Ct. at 2739.  Specifically, he proposes that the use of any of the three drugs that the ADOC has identified as the first drug used in its three-drug protocol (sodium thiopental, pentobarbital, or midazolam) would be an acceptable alternative.  Brooks fails to meet his *Glossip* pleading burden for four reasons.

First, he has not pleaded plausible facts that would demonstrate that sodium thiopental and pentobarbital are readily available to the ADOC.  Since September 10, 2014, the State has consistently and publicly maintained and explained that sodium thiopental and pentobarbital are no longer available to the ADOC for purposes of lethal injection executions.  While Brooks pleads that the drugs may be available to other states, he has not pleaded plausible facts indicating they are available to the ADOC.

Second, with respect to his pleadings regarding midazolam as an acceptable alternative, Brooks's language in his complaint is contingent:  "While complying with [*Glossip*], Brooks objects to being required to accept this suicide burden in order to challenge a method of execution that is unconstitutional.  . . .  He is merely pleading, . . . that if [midazolam] . . . work[s] the way Defendants' expert says it will[ ], such executions will not create a risk of an unconstitutional level of pain."

18

(Doc. # 72, at 12 n.30.)   By "merely pleading" an alternative in this contingent fashion (and invoking Defendants' expert, not his own), Brooks is cheating a substantive element of his cause of action by not pleading midazolam as a *viable* alternative.  A contingent pleading is not nearly robust enough to plead a plausible alternative.  It pleads a "maybe," in the same fashion a plaintiff in a negligence case might plead that "the defendant driver was negligent *if* he was speeding."  That hypothetical plaintiff has not pleaded speeding, and Brooks has not pleaded a viable alternative method of execution.

Third, distilling Brooks's claim to its essence, in reality he is challenging the ADOC's use of the *final two drugs* in *any* three-drug protocol, irrespective of which drug is used first.  Brooks's pleading can only be understood to allege that any one of the three which appeared as the first drug in variations of the protocol – sodium thiopental, pentobarbital, or midazolam – would adequately render him unconscious, insensate, and ultimately dead when used alone in the *identical amounts* specified by all of the protocols.  Accordingly, Brooks has misidentified his real claim altogether in his pleadings and cannot be said to have alleged any claim based solely on the unsuitability of midazolam in a three-drug protocol.  His complaint actually is about rocuronium bromide and potassium chloride.

Fourth and finally, as Defendants argue, by pleading that midazolam alone is an acceptable alternative to the current protocol, Brooks implicitly agrees that it is an effective drug for use in lethal injection protocol.  Specifically, Brooks cannot plead "on the one hand [that] 500 milligrams of midazolam will not sufficiently anesthetize him during a three-drug protocol, but on the other hand, argue that 500 milligrams will kill him outright."  (Doc. # 73, at 29–30.)  Unlike fiction, pleadings must realistically and firmly identify midazolam with either Jekyll or Hyde. Brooks would have midazolam both ways.   "Brooks is making an implied admission that midazolam will do what it is intended to do: render him deeply unconscious and insensate to pain."  (Doc. # 73, at 29.)

For these four reasons, Brooks cannot establish a substantial likelihood of success on the merits on his Eighth Amendment claim because he has failed to meet his pleading burden under *Baze* and *Glossip* to plead a viable, feasible, known and readily available alternative, a substantive element of his cause of action.

### 2.    *Statute of Limitations*

Brooks's Eighth Amendment claim first accrued in 2002 when Alabama switched to lethal injection as its method of execution.[6]  *See* Ala. Code § 15-18-

---

[6] Before the adoption of lethal injection, Alabama used electrocution as the method of execution.

82.1 (1975).  It is well settled that "a method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." *McNair v. Allen*, 515 F.3d 1168, 1174 (11th Cir. 2008).

Because Brooks's state review was final in 1997, the statute of limitations for his Eighth Amendment claim began to run on July 31, 2002, the date Alabama changed its method of execution to lethal injection, and Brooks knew that he was subject to that form of execution rather than electrocution.  *McNair*, 515 F.3d at 1177.  The statute of limitations applicable to this claim is two years.  *See* Ala. Code § 6-2-38 (1975); *McNair*, 515 F.3d at 1173.  Thus, "absent a significant change in the state's execution protocol," Brooks was required to file his Eighth Amendment claim by July 31, 2004.  *McNair*, 515 F.3d at 1777.  He failed to meet this deadline.

Alabama used sodium thiopental as the first drug in the three-drug sequence until April 6, 2011, when it replaced sodium thiopental with pentobarbital as the first drug to be injected.  However, that change did not reset the statute-of-limitations clock because it was not a "substantial change."  *Valle v. Singer*, 655 F.3d 1223 (11th Cir. 2011); *DeYoung v. Owens*, 646 F.3d 1319 (11th Cir. 2011); *Powell v. Thomas*, 643 F.3d 1300 (11th Cir. 2011); *Powell (Williams) v. Thomas*,

641 F.3d 1255 (11th Cir. 2011).   In any event, Brooks agrees that sodium thiopental and pentobarbital as one-drug protocols are constitutional agents of execution.

In an attempt to circumvent the expired statute of limitations, Brooks argues that Alabama's switch from pentobarbital to midazolam as the first drug in the protocol signals a substantial change in the protocol that operates to reset the statute-of-limitations clock.   In the posture of an emergency motion for stay of execution, Brooks must show a substantial likelihood of success on his argument that the statute of limitations is tolled by a substantial protocol change because the failure of this argument is dispositive of all of Brooks's claims.   Brooks cannot prevail on the merits of this argument.   As has been set out in Part IV.A., Brooks has pleaded that all three first-drug options ever used or proposed by the State, *used alone*, will render him unconscious, insensate, and ultimately dead in the *identical doses* of those drugs used in the three-drug protocols.   His own pleadings effectively allege that all three drugs render an identical result, albeit operating in different body-chemistry spheres, and that all safely work in an execution setting (giving Brooks the benefit of the doubt that he actually pleaded midazolam adequately as an alternative).   Therefore, his "substantial change" argument has practically no chance of success on the merits.

22

This is not an anomalous or inconsistent result, in view of the midazolam findings by numerous other courts, and in view of the express findings of *Glossip*. The *Glossip* Court pointed out that midazolam had been used "without any significant problems" in twelve executions, 135 S. Ct. at 2746; that testimony from both sides supported the district court's conclusion that midazolam can render a prisoner unconscious and insensate during the remainder of a three-drug procedure, *id.* at 2741; and that "numerous courts have concluded that the use of midazolam as the first drug in a three-drug protocol is likely to render an inmate insensate to pain that might result from administration of the paralytic agent and potassium chloride," *id.* at 2739–40 (collecting cases).

Given that Brooks's true challenge is to the last two drugs in Alabama's execution protocol, not midazolam *per* se, midazolam arguments divert attention from the fact that there is no substantial likelihood of success on the Eighth Amendment claim because it is time-barred.

**B.**   **Laches**

Aside from Brooks's claim being time-barred, Defendants submit that because of Brooks's unreasonable and unnecessary delay in intervening at the eleventh hour in this consolidated § 1983 action, that has been pending since 2012, and in seeking a stay of execution when his execution is imminent, his motion to

stay execution should be denied under the doctrine of laches.  Defendants argue that Brooks should not be rewarded for sleeping on his rights, that the State will be unduly prejudiced, and that the public interest in seeing capital sentences completed will be harmed by his unnecessary and inexcusable delay if the motion for a stay of execution is granted.

Considering Defendants' laches argument, the court is guided by precedent approving the dismissal of last-minute § 1983 actions and denial of motions to stay executions under the doctrine of laches.  A chronological review of those decisions begins with *Grayson v. Allen,* 499 F. Supp. 2d 1228 (M.D. Ala.), *aff'd,* 491 F.3d 1318 (11th Cir. 2007).   On November 17, 2006, twenty-four years *after* his conviction for capital murder, four years *after* Alabama adopted lethal injection for death-row inmates, and four years *after* filing his first § 1983 action about biological evidence, Grayson filed a second § 1983 action, this time challenging the State's lethal injection method and procedure, claiming that Alabama's lethal injection protocol violated the Eighth and Fourteenth Amendments.  He sought to enjoin the State from executing him with its then-current protocol.

Grayson had a protracted history of post-conviction litigation filed in both state and federal courts.  That history is detailed in *Grayson*, 499 F. Supp. 2d at 1231–33, and need not be repeated here.  On May 21, 2007, the court dismissed

Grayson's second § 1983 action, concluding that he had delayed unnecessarily in filing that lethal injection challenge and that his inexcusable delay caused undue prejudice to the State. The court also determined that Grayson was not entitled to a stay of execution and that both the complaint and the motion to stay execution were barred by the doctrine of laches. Grayson appealed, but on July 16, 2007, the Eleventh Circuit affirmed, ten days before Grayson's execution date. *Grayson v. Allen*, 491 F.3d 1318 (11th Cir. 2007). Its rationale is stated, in part, below:

> For all the foregoing reasons, the district court did not clearly err in finding that Grayson's delay in raising his § 1983 challenge to Alabama's lethal injection protocol was unnecessary and inexcusable. Grayson filed his present second § 1983 action (1) twenty-four years after a jury convicted him of the brutal murder of Mrs. Orr during a burglary and recommended a death sentence, *see Grayson v. Thompson*, 257 F.3d at 1207; (2) five years after this Court affirmed the denial of Grayson's § 2254 petition in 2001, *see id.* at 1232; and (3) nearly five years after the Supreme Court's subsequent denial of his petition for certiorari ''eliminate[d] the last possible obstacle to execution,'' *Jones*, 485 F.3d at 639 n.2 (concluding that because Alabama typically seeks an execution date shortly after the Supreme Court denies certiorari review of an inmate's § 2254 petition, the inmate ''should have foreseen that the execution date would likely be set promptly upon completion of collateral review''). Indeed, upon conclusion of Grayson's § 2254 proceedings, the State of Alabama promptly sought an execution date for Grayson in 2002, but Grayson's filing of his first § 1983 action thwarted the State's attempt to execute him in 2002. Even more indicative of delay, Grayson did not file this second § 1983 challenge in 2006 until four years after he filed his first post-conviction § 1983 action in 2002. *See Grayson v. King*, 460 F.3d at 1335.

Furthermore, given that Grayson has unreasonably delayed in filing this second § 1983 action, we conclude that this Court's decision in *Rutherford II* affirming a dismissal of a death row inmate's § 1983 suit for unnecessary delay guides our decision to affirm the district court's dismissal of Grayson's § 1983 action in this case.

. . .

. . . If Grayson truly had intended to challenge Alabama's lethal injection protocol, he would not have deliberately waited to file suit until a decision on the merits would be impossible without entry of a stay or an expedited litigation schedule. *See Rutherford II*, 466 F.3d at 974. We thus conclude that the district court properly found that Grayson offered no justification for why he could not have brought this § 1983 action earlier, and that Grayson's dilatory filing of this suit "'"leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out."'" *Jones*, 485 F.3d at 640 (citation omitted).

The Supreme Court has recognized that "'"[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence,"'" and that federal courts considering equitable relief "must be 'sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts.'" *Rutherford II*, 466 F.3d at 974 (quoting *Hill*, 126 S. Ct. at 2104). Both the State and Mrs. Orr's family have strong interests in seeing Grayson's punishment carried out after waiting twenty-five years since Grayson received a death sentence. After a quarter century of delay, Grayson is not entitled to another reprieve. *See Thompson v. Wainwright*, 714 F.2d 1495, 1506 (11th Cir.1983) ("Each delay, for its span, is a commutation of a death sentence to one of imprisonment."). Given the strong presumption against the grant of dilatory equitable relief, we conclude that the district court did not abuse its discretion in dismissing Grayson's § 1983 action due to his unnecessary delay.

*Id.* at 1324–26 (footnotes omitted).

A similar case with a commensurate result is *Williams v. Allen*, No. 2:07cv307, 2007 WL 2206846 (M.D. Ala. July 30), *aff'd*, 496 F.3d 1210 (11th Cir. 2007).  Luther Jerome Williams, an Alabama death-row inmate, was scheduled for execution by lethal injection on August 23, 2007.  On April 20, 2007, after the State had obtained his execution date from the Alabama Supreme Court, Williams filed a § 1983 complaint in this court, challenging the State's method of execution. The State moved to dismiss, contending that Williams's complaint was barred by either laches or the statute of limitations.  On June 6, 2007, Williams moved the district court for a temporary stay of execution, which the district court denied on July 10, 2007.  The district court subsequently granted the State's motion to dismiss Williams's § 1983 complaint, relying, in part, on *Grayson v. Allen*, *supra*, concluding that it was barred by the doctrine of laches for the following reasons:

> Like the plaintiff in *Grayson*, Williams waited to bring this action. He filed this lawsuit more than eighteen years after he was convicted and sentenced to death.  .  .  .  In this Court's view, Williams waited until there was no possible way for this Court to adjudicate the merits of the claims in this lawsuit without entry of a stay.

> While Williams could not have brought this lawsuit challenging the lethal injection protocol employed by the State of Alabama for executions before 2002, when it adopted that method of execution, he certainly could have done so any time after that.  His delay was unnecessary and inexcusable.  Like the plaintiff in *Grayson*, if Williams "truly had intended to change Alabama's lethal injection protocol, he would not have deliberately waited to file suit until a

27

decision on the merits would be impossible without the entry of a stay or an expedited litigation schedule." *Grayson*, 2007 WL 2027903 at *7. . . .

In light of the Eleventh Circuit's decision in *Grayson*, this Court is compelled to find that Williams is not entitled to injunctive relief because he delayed in filing his method-of-execution § 1983 suit until his execution was imminent. . . . Given the strong presumption against the grant of equitable relief to those who have been dilatory in requesting it, Williams' suit is due to be dismissed because he unnecessarily delayed in bringing suit until his execution was imminent and until there was not sufficient time to allow full adjudication on the merits of his claims without entry of a stay of his execution.

*Williams*, 2007 WL 2206846, at *5-6 (internal footnote omitted). The Eleventh Circuit affirmed. *Williams v. Allen*, 496 F.3d 1210 (11th Cir. 2007).

*Henyard v. Secretary, DOC*, 543 F.3d 644 (11th Cir. 2008), is also instructive. The day before his scheduled execution, Richard Henyard, a Florida death-row inmate, filed a § 1983 action, contending that certain aspects of Florida's method of execution by lethal injection constituted cruel and unusual punishment. The State of Florida moved to dismiss. Construing the complaint to include a motion for a stay of execution, the district court ordered the State to respond and ultimately denied the motion for a stay of execution, concluding that the complaint was time-barred and barred by laches. *Henyard v. Secretary, DOC*, No. 3:08cv0903 (M.D. Fla. Sept. 23, 2008).

In affirming, the *Henyard* Court noted that "even without his statute of limitations hurdle, Henyard was not entitled to a stay on the grounds of his undue delay in filing this § 1983 action and laches," 543 F.3d at 646–47, and "that the district court did not abuse its discretion in denying Henyard's motion for a stay based on undue delay and laches.  *See Schwab v. Sec'y, Dep't of Corrs.,* 507 F.3d 1297, 1301 (11th Cir. 2007)."  543 F.3d at 647.  The *Henyard* Court also noted: "Henyard waited not only eight years after Florida adopted its lethal injection protocols, but also almost 13 months after the August 2007 revisions to the protocols to file his § 1983 action."  *Id.* at 648.  In its final words on laches, the *Henyard* Court observed:

> .  .  .  As in other last-minute § 1983 challenges to lethal injection, laches bars Henyard's motion for a stay of execution.  *See Williams*, 496 F.3d at 1215; *Grayson v. Allen*, 491 F.3d 1318, 1322 (11th Cir.), *cert. denied*, ⸺ U.S. ⸺, 128 S. Ct. 6 . . . (2007); *Jones v. Allen*, 485 F.3d 635, 639–40 (11th Cir.), cert. denied, ⸺ U.S. ⸺, 127 S. Ct. 2160, . . . (2007); *Rutherford v. McDonough*, 466 F.3d 970, 973–74 (11th Cir. 2006), *cert. denied*, ⸺ U.S. ⸺, 127 S. Ct. 465, . . . (2007); *see also Hill v. McDonough*, 547 U.S. 573, 584, 126 S. Ct. 2096, 2104, . . . (2006) (''A court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.''') (citation omitted); *Nelson v. Campbell*, 541 U.S. 637, 649–50, 124 S. Ct. 2117, 2126, . . . (2004) (''[B]efore granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim.'').

*Id.* at 649.

Brooks now finds himself in a posture analogous to Grayson, Williams, and Henyard.  The chronology of Brooks's post-conviction litigation time-line and other significant developments reflect that his November 2, 2015 motion to intervene in the method-of-execution challenge presented in this Midazolam Litigation comes:  (1) nineteen months after the U.S. Supreme Court denied certiorari on Brooks's habeas petition; (2) fourteen months after the State of Alabama announced it was changing its execution protocol by substituting midazolam for pentobartital as the first drug administered in the three-drug, lethal-injection sequence; (3) four months after *Glossip* was decided; (4) five weeks after the State moved (for a second time) to set an execution date for Brooks; (5) a year or more after his co-Plaintiffs filed in the Midazolam Litigation (*Grayson*, 12-cv-316, filed April 6, 2012; *Frazier*, 13-cv-781, filed Oct. 21, 2013; *Boyd*, 14-cv-1017, filed Oct. 2, 2014, *Roberts*, 14-cv-1028, filed Oct. 3, 2014; *Myers*, 14-cv-1029, filed Oct. 3, 2014; and *Hunt*, 14-cv-1030, filed Oct. 3, 2014); and (6) eleven weeks and four days prior to his January 21, 2016 execution date.  When this chronology is viewed through the prism of the rock-solid body of case law regarding the doctrine of laches, as reviewed above, it is clear that Brooks's motion to stay his execution is subject to the strong equitable presumption against the

grant of a stay because his suit "is too late to avoid the inevitable need for a stay of execution." *Williams*, 496 F.3d at 1213.

Brooks refuses to acknowledge any delay on his part. Instead, he shifts the blame for the delay to Defendants, arguing that Defendants are the ones who objected to a consolidated, final evidentiary hearing on the same date, January 12, 2016, as the evidentiary hearing in *Arthur*. (Doc. # 81, at 9 & n.28.) But the record belies the argument. (*See* Doc. # 79-3 (Nov. 4, 2015 status conference), in which counsel for Plaintiffs expressly did not object to a trial date in the Midazolam Litigation "two to three months after the Arthur case" because "we've not even begun discovery here," Doc. # 79-3, at 23, and again agreeing that the Midazolam Litigation "cannot be ready for trial by the time Arthur is tried" because "we haven't done discovery yet.") And, as elaborated upon in Part IV.D, the realities of proceeding to trial on January 12, 2016, are unrealistic.

Brooks also implies that his delay in moving to stay his execution is excusable because the Alabama Supreme Court had stayed his execution indefinitely. Brooks is mistaken that the stay of execution he received on March 23, 2015, from the May 21, 2015 execution date, was a general stay. The Alabama Supreme Court entered a warrant setting Brooks's execution for a date certain, May 21, 2015 (*see* Ala. R. App. P. 8(d)(1), which provides that the Alabama

31

Supreme Court's order "fixing a date of execution" is the "execution warrant"). The Alabama Supreme Court's subsequent Order granted a stay of that specified execution date. (Doc. # 81-1, 81-2.) The Alabama Supreme Court's execution warrant expired at midnight on May 21, 2015; therefore, after the clock struck midnight, there was no longer a warrant for a May 21, 2015 execution date; hence, the necessity for a stay had dissolved. *Cf. In re Comm'r, Ala. Dep't of Corrs.,* No. 15-10262 (11th Cir. Feb. 12, 2015) (observing that "[t]he death warrant issued by the Alabama Supreme Court expired at midnight on March 29, 2012" and that the Eleventh Circuit's prior stay of Arthur's March 29, 2012 execution date set by the Alabama Supreme Court "ha[d] expired as it was a stay of a discrete event on March 29, 2012, and not a general stay"). Moreover, in response to Brooks's motion to stay execution, the State points out that it did not oppose Brooks's motion for a stay of the May 21, 2015 execution date because of the pendency of *Glossip*. Thus, Brooks should have known no later than June 29, 2015, the date *Glossip* was decided, that his execution again was imminent and that the State likely would seek a new execution date, as his stay, not being a general stay, expired at midnight on May 21, 2015.

Based on the foregoing, Brooks's motion for a stay of execution is due to be denied because of Brooks's unreasonable, unnecessary, and inexcusable delay in bringing suit.

## C.   <u>Other Equities</u>

Brooks contends that the equities in granting a stay weigh in his favor, but his arguments are not convincing.  First, Brooks argues that Defendants "are not harmed by allowing Brooks[ ] to litigate this case as is presently scheduled."  (Doc. # 81 at 10.)  Brooks is referring to the April 2016 trial date, which was set by an Order entered three days prior to Brooks's intervention in this case.  A similar argument has been rejected by the Eleventh Circuit.   *See Jones v. Allen*, 485 F.3d 635, 641 (11th Cir. 2007).

In *Jones*, the condemned inmate urged a stay of his execution based on the possibility of a trial on related lethal injection issues in a different case before another district judge.  *Id.* at 641 n.4.  The Eleventh Circuit disagreed that a stay was warranted, notwithstanding that the potential trial was scheduled to commence in approximately two months:

> . . .  Jones would have been entitled to a trial on the merits had he brought his suit in time to allow consideration of the merits without requiring entry of a stay, but he did not. Thus, the strong presumption against a stay operates against Jones.  The mere setting of a trial date in another case does not increase whatever preexisting risk there was that a mistake will be made in his imminent execution (and cause pain

that rises to the level of cruel and unusual punishment). In fact, the equitable considerations in each case are naturally different. Thus, the mere possibility of a trial date in another case does not affect the balancing of the equities in this case.

*Id.* at 641 n.4.

Like Jones, Brooks's claim could have been heard on the merits had he commenced this action earlier. *But cf. Williams v. Allen*, 496 F.3d 1210 (11th Cir. 2007) (affirming district court's denial of a motion to stay execution on grounds that a year presented insufficient time to permit full adjudication on the merits); *Jones*, 485 F.3d at 640 n.2 (noting that the district court made a factual finding that a trial on the merits in the § 1983 method-of-execution case "would take 'much more than three months' and that a subsequent appeal 'would add months, if not years, to this litigation'" (citation omitted)).  Brooks's argument ignores the fact that he, the only Plaintiff in this litigation with an execution date, is subject to the "strong equitable presumption against the grant of a stay" because the merits of his claim cannot be heard "without requiring entry of a stay."  *Grayson*, 491 F.3d at 1322.  Brooks, like Jones, by waiting so late "to file his challenge to the State's lethal injection protocol, 'leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out.'"  *Jones*, 485 F.3d at 640.  And Brooks is chargeable

34

with "'delay with notice' of his rights, a delay that in equity results in undue prejudice to the defendants." *Grayson*, 499 F. Supp. 2d at 1242.

Second, Brooks argues that the State engaged in inequitable conduct when it sought an execution date for him "while it knew that there were cases going to final hearing that would resolve the underlying issue in this case." (Doc. # 81 at 9.) Contrary to the implication in Brooks's argument, however, he did not have a case pending when the State filed its motion with the Alabama Supreme Court requesting an execution date. Brooks has pointed to nothing that suggests bad faith on the part of the State in seeking an execution date for him after the decision in *Glossip* was rendered and at a time when Brooks had no pending lawsuit in this or any other court. *Cf. Jones*, 485 F.3d at 639 n.2 (noting that "the district court expressly found as a fact that there is no evidence in this case that the State sought and obtained an execution date for Jones in bad faith"). The State and the victim of Brooks's crime "have an important interest in the timely enforcement of a sentence," *Hill*, 547 U.S. at 584, and those interests would be harmed by yet another stay of Brooks's execution. In short, Brooks fails to overcome the strong equitable presumption against a grant of a stay where, as here, the merits cannot be reached without the entry of a stay.

**D.**   **Concluding Remarks on *Baze*, *Glossip*, and Inevitability**

A word about the cancelled hearing on the emergency motion for stay of execution is appropriate.  Brooks's intervention was allowed exactly sixty days before his execution date.  The issues to be addressed in a final trial are developed in the normal course of litigation of a typical civil suit, insofar as is possible: discovery with its attendant protective orders, disputes, and hearings, including several expert witnesses on highly technical medical and chemical issues; motion practice, including motions for summary judgment, *Daubert* motions, motions *in limine* and the like, and the attendant scheduling of briefing and argument, plus the time necessary to write reasoned opinions and orders; the pretrial conference and formal pretrial hearing, resulting in a detailed pretrial order with final trial deadlines, stipulations and instructions; the preadmission of evidence and expert reports; the actual trial; and the time necessary to write reasoned opinions and orders afterward.  Then there is the inevitable appeal to the Circuit and Supreme Court, entailing another two rounds of pleading, briefing, arguments, and writing. All of this activity cannot be compressed into sixty days.  Indeed, the parties have much trouble completing just the trial portion in several months, a period which has been given to prepare for the *Arthur* litigation and this Midazolam Litigation. Brooks simply waited too late, waited well past several important milestones,

waited much longer than his co-plaintiffs in the litigation into which he intervened. As noted, the delay resulted in cancellation of the hearing on the emergency motion for a stay, and in these findings.

There is a more fundamental, even existential, reason not to stay the execution and not to have a hearing on the emergency motion. *Glossip* clarified method-of-execution pleading requirements by solidifying a pleading conundrum of inevitability in which death penalty inmates find themselves at the end of the method-of-execution litigation process. Before *Glossip* it was possible to at least plead and argue interminable avenues of attack by using novel but vague pleadings of questionable plausibility (sometimes encouraged by the occasional outlier opinion), and these pleadings tended to gain some traction in court because of the subject matter. In ordinary § 1983 litigation, such tactics are disfavored and almost always exposed. In method-of-execution cases, courts methodically completed the paces in one round, only to face another round. One may witness the *Arthur* litigation referenced above as a prominent example.

*Glossip* changed all that. The Supreme Court made it abundantly clear, at least to the undersigned, that pleading the alternative – and proving it – is a requirement of the case-in-chief of the condemned, and that therefore the alternative pleaded must be, in *Twombly/Iqbal* vernacular, factually plausible.

That makes execution inevitable, hence the inevitability conundrum into which the prisoner must plead himself. Execution is inevitable if for no other reason than that it is legal, which presupposes a legal method. *See Baze*, 553 U.S. at 47 ("[C]apital punishment is constitutional. It necessarily follows that there must be a means of carrying it out." (citation omitted)). By pleading the midazolam alternative contingently, Brooks failed to plead a plausible, available alternative. But even if he had pleaded a solid alternative, Brooks's pleading on his Eighth Amendment claim virtually ensures that, either by the State's protocol or his own alternative, he will be executed. Under *Glossip*, he is precluded from even trying to declare *both methods* – the existing protocol and his alternative – unconstitutional.

Condemned inmates, including Brooks, have taken to referring to this alternative pleading requirement as the "suicide burden," (Doc. # 72 at 12, n.30), an implicit acknowledgement of their understanding that *Glossip* finalizes the inevitability of execution, and that the inmate is required to plead his challenge into a pleading corner from which there is no escape. Brooks pleaded an alternative that is part of the present protocol, which means his inevitable execution will be either with three drugs beginning with midazolam, or with midazolam alone, which undermines his arguments about the three-drug protocol.

38

Either way, his execution would appear to be inevitable in the post-*Glossip* landscape.

Practically all § 1983 challenges arrive at the station pulling freight cars loaded with procedural history. It cannot be seriously challenged that the platform is inevitability of execution, and that is a logical terminus. All substantive avenues of challenge to the fact of conviction and the conviction itself have been concluded; inmates have exhausted all remedies in state and federal court, sometimes by multiples. When an inmate then piles an emergency motion for a stay of execution on a train-load of procedural history that now includes a § 1983 action, the inmate's burden is indeed heavy:

> "A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. [And] [h]e must show that the risk is substantial when compared to the known and available alternatives." [*Baze*, 553 U.S.] at 61, 128 S. Ct. 1520. The preliminary injunction posture of the present case thus requires petitioners to establish a likelihood that they can establish both that Oklahoma's lethal injection protocol creates a substantial risk of severe pain and that the risk is substantial when compared to the known and available alternatives.

135 S. Ct. at 2737. Elsewhere *Glossip* quoted *Baze*'s requirements to prove risk with strongly descriptive terms that included "*sure or very likely* to cause serious illness and needless suffering, and give rise to sufficiently *imminent* dangers." *Id.* (internal quotation marks omitted). Thus, the burden on the prisoner in his case-in-

chief to prove a viable alternative to the State's chosen method can exist for only one logical reason:  to bring finality to the litigation process.

## V.  CONCLUSION

That a prisoner would refuse to accept his burden until the very last second of the very last minute of litigation – and life – is understandable.  Such is the status of Brooks.  He has failed to plead up to the *Glossip* standard; he has failed to establish all requirements for entry of the extraordinary remedy of a stay of execution; and he has unreasonably delayed his litigation efforts.

Accordingly, it is ORDERED that Brooks's Emergency Motion to Stay Execution (Doc. # 81) is DENIED.

DONE this 22nd day of December, 2015.

<u>                  /w/ W. Keith Watkins                  </u>
CHIEF UNITED STATES DISTRICT JUDGE

40