IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CAREY DALE GRAYSON, *et al.*<br><br><br>                    Plaintiffs,<br><br>vs.<br><br>JEFFERSON S. DUNN, *et al*<br><br>                    Defendants. | CASE NO.  2:12-CV-0316-WKW<br>**Death Penalty Case**<br>**Execution Set for December 8, 2016**<br><br>Public Version; Redacted Copy |

## PLAINTIFF RONALD BERT SMITH'S RESPONSE TO
## SHOW CAUSE ORDER OF NOVEMBER 9, 2016

Acknowledging that injection of potassium chloride into an unanesthetized person would be unconstitutional, and further acknowledging that there is evidence that Christopher Brooks may have suffered exactly that type of death, this Court has ordered Mr. Smith to show cause why he should not order that Defendants carry out his execution using one of the methods he identified as an alternative to the method Defendants used on Mr. Brooks. This Court can order Defendants to use the single-drug midazolam option if it permanently enjoins the state from using the present three-drug protocol and finds that the State has adequate equipment and training to carry out an execution using the new method.

1

## I. The alternative proposed by Mr. Smith and the State's response to that proposal.

On April 15, 2016, Mr. Smith filed a complaint in this Court alleging that Alabama's method of execution would violate his Eighth Amendment right against cruel and unusual punishment.[1] In that complaint, as required by *Glossip v. Gross*,[2] Mr. Smith identified three alternative methods of execution that would entail a significantly lesser risk of pain than the present protocol,[3] one of which involves the injection of a large bolus of midazolam[4] followed by a continuous infusion of midazolam.[5] The complaint alleged that the initial bolus would be 500mg and cited to Exhibit F, a report from Dr. Ronald Tackett.[6]

After Mr. Smith's case was consolidated with the other cases in the Midazolam Litigation,[7] Defendants moved to dismiss Mr. Smith's complaint.[8] With respect to Mr. Smith's single-drug midazolam alternative, the Defendants offered to: "consent to the ADOC executing Plaintiffs by lethal injection using only midazolam by an initial 500-

---

[1] *Smith v. Dunn*, 16-CV-269, Doc. 1.

[2] 135 S. Ct. 2726, 2731 (2015).

[3] *Smith v. Dunn,* 16-cv-269, Doc. 1, pp. 13-19. Mr. Smith would again note that he continues to object to this requirement.

[4] *Smith v. Dunn*, 16-cv-269, Doc. 1, p. 19.  Dr. Tackett's report states that the initial bolus would need to be 2500 mg of midazolam followed by a continuous infusion. The reference to 500mg in the complaint is a typographical error.

[5] *Id.*

[6] *Id.*

[7] Doc. 153.

[8] Doc. 160.

milligram bolus of midazolam, followed by additional 500-milligram doses of midazolam, if needed, until Plaintiffs' sentence is carried out."[9]

The Alabama Supreme Court set Mr. Smith's execution date for December 8, 2016.[10] On November 9, 2016, this Court ordered Mr. Smith to show cause why it should not "order Defendants to execute him using the method pled in his complaint, *viz.*, 'a large initial dose of midazolam, followed by continuous infusion.'"[11]

## II. This Court can order Defendants to execute Mr. Smith using the method pled in his complaint.

This Court can and should order the Defendants to use Mr. Smith's identified single-drug midazolam alternative. Before it can do so, this Court must enjoin the Defendants from using the present protocol, and this Court must be satisfied that Defendants have adopted an adequate protocol, including accounting for all necessary equipment and sufficient training to execute Mr. Smith using his proposed single-drug midazolam alternative.[12] Assuming these prerequisites are satisfied, then this Court can order the Defendants to use Mr. Smith's single-drug midazolam alternative identified in his complaint and detailed in Dr. Tackett's report, which is attached as Exhibit F to that complaint.

---

[9] Doc. 160, p. 22 n.5.

[10] Doc. 186.

[11] Doc. 200, p. 4.

[12] The protocol should also account for the fact that a percentage of the population reacts paradoxically to midazolam by becoming agitated rather than sedated.

**A. The Defendants have not provided this Court with an execution protocol to implement the method proposed by Mr. Smith.**

Mr. Smith identified a single-drug midazolam protocol that requires injection of a large bolus of midazolam followed by a continuous infusion of midazolam. This is *not* what the Defendants "consented" to in their pleading. They have, instead, offered to inject Mr. Smith with 500 mg of midazolam, followed by repeated 500 mg injections, if necessary.

As described in Dr. Tackett's report, Exhibit F to Mr. Smith's complaint:

> If midazolam was to be used as the sole agent for lethal injection, a loading dose between 2.5 and 3.75 g [2,500 to 3,750 mg] could be used followed by a continuous IV infusion until death. This would be preferable to repeated boluses of midazolam until death, as the bolus method would result in spikes and dips in concentration while the continuous infusion method would provide a continuous increase in the drug until death.[13]

This is very different from the protocol described by the Defendants in their motion to dismiss, which, as noted above, involves merely injecting 500mg of midazolam and then more if it is found to be necessary.[14]

---

[13] *Smith v. Dunn*, 16-cv-269, Doc. 1-6, p.4.

[14] ███████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Counsel for the Defendants informed undersigned counsel that the protocols they submitted to this Court in compliance with the November 9 order are identical to those it submitted in the Christopher Brooks case.[15]  Therefore, before this Court can order the Defendants to use Mr. Smith's identified alternative, it must order the Defendants to develop a single-drug midazolam protocol that employs a large bolus of midazolam followed by a continuous infusion of midazolam.

To be constitutionally sufficient, the protocol must account for: (1)  the equipment used to perform the infusion; (2) the amount of midazolam to be used in the initial bolus (between 2,500 and 3,750 mg); (3) the amount of midazolam necessary over the course of the infusion, including any back-up supply, should the first infusion be exhausted before Mr. Smith's death; and (4) what to do in the event that Mr. Smith has a paradoxical reaction to midazolam, which occurs in roughly 2% of the population. Once all of these necessary provisions have been drafted, they must be made available to Mr. Smith's counsel, so counsel and Mr. Smith's expert can review the protocol to ensure that it properly implements Mr. Smith's identified alternative.

---

[15] Exhibit A (email from Thomas Govan to John Palombi).

**B. This Court must declare the present protocol invalid before it can order the Defendants to use the single-drug midazolam protocol identified by Mr. Smith.**

In *Glossip*, the Supreme Court held that, in order to win a suit challenging a method of execution, the Plaintiff must "identify a known and available method of execution that entails a lesser risk of pain."[16] The Court went on to discuss this requirement and state that the Petitioners in *Baze v. Rees*[17] failed in their case because they did not "establish the existence of a known and available alternative method of execution that would entail a significantly less severe risk."[18]

*Glossip* established that identifying an alternative method of execution is a prerequisite to finding that a method of execution is unconstitutional.[19] The Court's interpretation of *Baze* indicates that establishing such an alternative method is necessary to prove that the method being used violates the Eighth Amendment.[20] This is consistent with the position that counsel for the Defendants took in December 2015, when they informed Plaintiff's counsel that:

> "[t]o be clear, this protocol *has not* been implemented and cannot be implemented unless this Court enters judgment on behalf of Brooks . . . This protocol merely reflects that ADOC has the ability to carry out the alternative procedure sought in Brooks' complaint."[21]

---

[16] *Glossip*, 125 S.Ct. at 2732.

[17] 553 U.S. 35 (2008).

[18] *Id.* at 2737. *See also Baze*, 553 U.S. at 57-60.

[19] *Glossip*, 135 S.Ct. at 2732.

[20] *Id.*

[21] Exhibit B (James Houts Letter (Dec. 4, 2015)) (emphasis in original).

Here, Mr. Smith has provided evidence that Christopher Brooks opened his eye after having been injected with midazolam, which may indicate that he was sedated but not insensate when paralyzed by the injection of rocuronium bromide and killed with the injection of potassium chloride. Mr. Smith also pleaded, with the support of Dr. Tackett's expert report, that midazolam could be used as part of a single-drug protocol, completely eliminating the risk of pain caused by injecting a person who is inadequately anesthetized with a lethal dose of potassium chloride. The Court has acknowledged this in its Order.[22]

Applying *Glossip* to the facts of Mr. Smith's case and the position taken by the Defendants, this Court can order the Defendants to execute Mr. Smith using the single-drug midazolam protocol he and his expert have identified, after it invalidates the present protocol.

### C. This Court must order that a single-drug protocol be used in all future executions because it would violate the Fourteenth Amendment to allow the State to decide which inmates are executed using a protocol that significantly reduces the risk of pain.

This Court can order that the State use the single-drug midazolam protocol Mr. Smith has identified to execute him. However, in doing so, this Court must also permanently enjoin Defendants from using the present three-drug protocol in any

---

[22] Doc. 200.

other execution. Failing to do so violates the Fourteenth Amendment by treating similarly situated inmates differently without a rational basis for doing so.

To establish a claim for relief under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.[23]  Death-sentenced inmates have a fundamental right under the Fourteenth Amendment to the United States Constitution to be free from cruel and unusual punishment.[24]

The State has no compelling interest in "selectively introducing risk into some executions but not others."[25] If this Court were to order that Mr. Smith be executed using a single-drug protocol without prohibiting Defendants from using the three-drug protocol in future executions, it would be introducing the risk of torturous death from potassium chloride into future executions without any rational basis.[26]  "Mere pursuit of administrative convenience that risks flawed executions is not a legitimate state interest."[27] Therefore, any order requiring Defendants to use the method of

---

[23] *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966) ("[w]here fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined.").

[24] *Cooey v. Kasich*, 801 F. Supp. 2d 623, 653 (S.D. Ohio 2011).

[25] *Id.*

[26] *Id.*

[27] *Id.*

execution Mr. Smith identified as an alternative to the present method to execute Mr.

Smith must require the Defendants to use it in all future executions.

Respectfully submitted,

/s/ John Anthony Palombi
John Anthony Palombi
Spencer J. Hahn
Assistant Federal Defenders
Federal Defenders
Middle District of Alabama
817 S. Court Street
Montgomery, AL 36104
(334)-834-2099
John_Palombi@fd.org
KY Bar 86784
Spencer_Hahn@fd.org
OR Bar 043027

Counsel for Ronald Bert Smith

## CERTIFICATE OF SERVICE

This Response was filed on November 16, 2016. Service was effectuated on

counsel of record for all defendants through the CM/ECF system.

/s/John Anthony Palombi
John Anthony Palombi
Assistant Federal Defender
Federal Defenders, Middle District of Alabama
817 South Court Street
Montgomery, Alabama 36104
Phone: (334) 834-2099
E-mail: John_Palombi@fd.org
KY Bar Code: 86784

Counsel for Ronald Bert Smith

9