IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CAREY DALE GRAYSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  2:12-CV-0316-WKW |
| | ) | |
| JEFFERSON S. DUNN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

and,

| | | |
|---|---|---|
| CHARLES LEE BURTON, | ) | |
| ROBERT BRYANT MELSON, | ) | |
| RONALD BERT SMITH, | ) | |
| GEOFFREY TODD WEST, | ) | |
| TORREY TWANE MCNABB, | ) | CASE NOS.  2:16-CV-0267-WKW |
| | ) | 2:16-CV-0268-WKW |
| Plaintiffs, | ) | 2:16-CV-0269-WKW |
| | ) | 2:16-CV-0270-WKW |
| v. | ) | 2:16-CV-0284-WKW |
| | ) | |
| JEFFERSON S. DUNN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Ronald Bert Smith is an Alabama death-row inmate, in the custody of the Alabama Department of Corrections ("ADOC") awaiting his execution scheduled for December 8, 2016.[1]  On April 15, 2016, he filed a complaint under 42 U.S.C. § 1983 challenging the constitutionality of Alabama's method-of-execution under the First, Eighth, and Fourteenth Amendments to the United States Constitution.  His complaint contains identical claims and involves questions of fact and law common to the Midazolam Litigation.  On April 28, 2016, the court consolidated five cases, including Smith's, with the Midazolam Litigation for discovery and trial in order to promote judicial economy, eliminate duplication of discovery, and avoid unnecessary costs.  (*See* Doc. # 153.)

This matter is before the court on Defendants' Consolidated Motion to Dismiss Intervenor Plaintiffs' Complaints.[2]  (Doc. # 160.)  The motion has been fully briefed and is ripe for review.  Defendants' motion is due to be granted as to Smith.

---

[1] On September 14, 2016, the Alabama Supreme Court set Smith's execution date.  (Docs. # 186, 186-1.)  Smith has not filed a motion to stay his execution.

[2] Defendants' motion concerns Smith and four other plaintiffs (Charles Lee Burton, Robert Bryant Melson, Geoffrey Todd West, and Torrey Twane McNabb), all of whom were consolidated into the Midazolam Litigation on April 28, 2016.  (Doc. # 153.)  This Memorandum Opinion and Order addresses Defendants' motion only in relation to Smith's complaint.

A.      **Smith's Capital Litigation History**

Smith was convicted of capital murder for murder committed during a robbery in which he shot and killed a convenience store clerk.  *Smith v. State*, 756 So. 2d 892, 901 (Ala. Crim. App. 1997).  His direct appeal concluded in 2000, *Smith v. Alabama*, 531 U. S. 830 (2000), and his state post-conviction and federal habeas proceedings were concluded more than a year ago. *Smith v. Thomas*, 134 S. Ct. 513 (2014).

B.      **Events Leading to Formation of the Midazolam Litigation**

From 2002 until 2011, sodium thiopental was the first drug used in the ADOC's three-drug lethal injection protocol.  In 2011, the ADOC amended its protocol by substituting pentobarbital for sodium thiopental as the first drug.  At that time, the ADOC made no amendment to the other two drugs administered, pancuronium bromide and potassium chloride.

On September 10, 2014, the ADOC amended its execution protocol again, this time by substituting midazolam for pentobarbital as the first drug used in its three-drug lethal-injection sequence, and by substituting rocuronium bromide for pancuronium bromide as the second drug.  On September 11, 2014, the State disclosed the ADOC's amended protocol in motions it filed in the Alabama Supreme Court to set execution dates for several death-row inmates.  (Doc. # 160-4, ¶¶ 24–28.)

In June 2015, the Supreme Court rendered its decision in *Glossip v. Gross*, 135 S. Ct. 2726 (2015), and applied the Court's decision in *Baze v. Rees*, 553 U. S. 35 (2008) (plurality opinion), to Oklahoma's lethal-injection protocol (which is virtually identical to Alabama's protocol).  The Court held that the plaintiffs failed to establish a likelihood of success on the merits of their claim that the use of midazolam violated the Eighth Amendment.

## C.    Smith's Claims

Smith's first cause of action is an Eighth Amendment claim challenging the ADOC's current execution protocol, alleging that the ADOC's use of midazolam, the first drug to be administered, is unconstitutional.  Specifically, he asserts that midazolam will not properly anesthetize him so as to prevent him from feeling an unconstitutional level of pain associated with the injection of potassium chloride, the third drug.  On this premise, he claims that Defendants' current execution protocol creates a "substantial risk of serious harm," *Baze*, 553 U.S.at 50, and violates his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.  Instead of midazolam used in a three-drug, lethal injection protocol, Smith proposes three alternative methods of execution, using

either pentobarbital, sodium thiopental, or a 500-milligram dose of midazolam in a one-drug, lethal injection protocol.[3]

In his second cause of action, Smith challenges that part of the ADOC's execution protocol known as the consciousness assessment.  He claims that it is an inadequate method to ensure that he is sufficiently anesthetized prior to being injected with the remaining two drugs, which creates a substantial risk of unconstitutional pain, in violation of the Eighth Amendment.

Smith's third cause of action is that his right to meaningful access to the courts requires that his counsel, as a witness to the execution, have access to a cellular or land-line telephone until the execution is complete.   Smith contends that the ADOC's policy prohibiting phone access to his counsel during his execution denies him that right, in violation of the First, Eighth, and Fourteenth Amendments.

## II.  DISCUSSION

Defendants have moved to dismiss Smith's complaint *in toto*, pursuant to Federal Rule of Civil Procedure 12(b)(6), for three independent reasons:  (1) his complaint is subject to dismissal at this juncture, without an evidentiary hearing, because it is clear from the face of the complaint that all three claims are time-barred, (2) all three claims fail to state a claim for which relief can be granted, and

---

[3] Smith now claims in briefing, filed on November 16, 2016, that 500-mg is a "typo" and that he meant "2500-mg followed by continuous infusion."  (Doc. # 201 at 2, n.4.)  However, he has not moved to amend his complaint.

(3) because Smith has unreasonably delayed in bringing these claims, his complaint is subject to dismissal under the doctrine of laches.

**A.    <u>Statute of Limitations</u>**

It is well settled that when the complaint shows on its face that the limitations period has expired, a statute-of-limitations defense may be raised on a motion to dismiss for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  *See AVCO Corp. v. Precision Air Parts, Inc*., 676 F.2d 494, 495 (11th Cir. 1982) (party may seek dismissal based on statute-of-limitations defense pursuant to Rule 12(b)(6); *Mann v. Adams Realty Co.*, 556 F.2d 288 (5th Cir. 1977); *Mooney v. Tallant*, 397 F. Supp. 680 (N. D. Ga. 1975).

**1.    *Eighth Amendment Midazolam Claim***

Smith alleges that the use of midazolam in the ADOC execution protocol violates the Eighth Amendment.  He recognizes that in order to maintain his challenge to Alabama's method of execution, he must "identify a known and available alternative method of execution that entails a lesser risk of pain." *Glossip*, 135 S. Ct at 2731.  To comply with *Glossip*, Smith submits that there are alternative methods of execution available to Defendants that significantly reduce the risk of an unconstitutional level of pain.  For instance, he claims that numerous states have switched from a two-or-three-drug protocol to a one-drug protocol, and that since January 1, 2014, in other states, nearly forty inmates have been executed using "a single bolus of pentobarbital, making it the most common method of execution in

the United States." (Doc. # 160-4, ¶ 51.)  Smith also proposes two other alternatives: the use of either sodium thiopental or a 500-milligram dose of midazolam in a single-drug protocol.[4]  (Doc. # 160-4, ¶¶ 43–68.)

Smith requests a declaratory judgment that Alabama's current three-drug execution protocol is unconstitutional under *Baze* and *Glossip*, and that the court enjoin Defendants from executing him with inadequate anesthesia and execution procedures that violate his Eighth Amendment right to be free from cruel and unusual punishment.  He acknowledges that from the time Alabama adopted lethal injection as its method of execution in 2002, the ADOC has employed a three-drug, lethal-injection protocol.[5]  It is undisputed that from 2002 until 2011, the ADOC used sodium thiopental as the first drug in the three-drug protocol, and from 2011 until September 2014, pentobarbital was the first drug used.  On September 10, 2014, the ADOC amended the protocol again, substituting midazolam for pentobarbital as the first drug used.

As alternatives to midazolam in the ADOC's three-drug protocol, Smith proposes the use of either pentobarbital, sodium thiopental, or a 500-milligram dose

---

[4]  Smith objects to *Glossip*'s requirement that he must propose execution alternatives in order to challenge a method of execution that he contends is unconstitutional.  He emphasizes that he is not waiving any potential claims that his rights could be violated by the maladministration of the alternatives he proposes.  Smith states that he is merely pleading, as the plaintiffs did in *Baze*, that if his proposed execution alternatives work properly and are administered correctly, such execution will not create a risk of an unconstitutional level of pain.  (Doc. #160-4, at 13 n.27.)

[5]  The second drug has always been a paralytic, and the third drug has always been potassium chloride.

of midazolam to be used in a single-drug protocol.  (Doc. # 160-4 at 13–18.)  He does not propose that the ADOC return to its previous use of sodium thiopental or pentobarbital in a three-drug protocol.  The fact that Smith does not propose that the ADOC be required to return to its use of sodium thiopental or pentobarbital as the first drug administered in a three-drug protocol is significant because it reveals the true nature of his Eighth Amendment claim:  Smith is challenging the three-drug, lethal-injection execution protocol, regardless of the first drug administered, as being unconstitutional.  In effect, he is challenging the last two drugs, not the first:  not sodium thiopental, not pentobarbital, not midazolam.

Smith could have challenged the ADOC's use of a three-drug protocol any time after it was implemented fourteen years ago on July 31, 2002, but he failed to do so until 2016.  Given that his real challenge is to the last two drugs in Alabama's execution protocol, and not to midazolam *per se*, his midazolam argument is a smokescreen, diverting attention from the fact that his Eighth Amendment claim challenging the ADOC's three-drug, lethal-injection protocol is time-barred.

Smith's Eighth Amendment method-of-execution claim concerning the three-drug protocol accrued in July 2002 when Alabama switched to lethal injection as its method of execution.[6]  *See* Ala. Code § 15-18-82.1 (2002).  It is well settled that "a method of execution claim accrues on the later of the date on which state review is

---

[6]  Before the adoption of lethal injection, electrocution was Alabama's sole method of execution.

complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." *McNair v. Allen*, 515 F.3d 1168, 1174 (11th Cir. 2008).

Smith's direct appeal concluded in 2000. Smith was on notice in 2002 that he was subject to that form of execution rather than electrocution, *McNair*, 515 F. 3d at 1177, and the statute of limitations for his claim began to run on July 31, 2002, the effective date of lethal injection executions. The statute of limitations applicable to this claim is two years. *See* Ala. Code § 6-2-38 (1975); *McNair*, 515 F.3d at 1173. Therefore, "absent a significant change in the state's execution protocol," Smith was required to file his Eighth Amendment method-of-execution claim by July 31, 2004. As to the last two drugs in the protocol, Smith has not argued that there has been a substantial change. Thus, the statute of limitations for Smith's claim challenging Alabama's use of rocuronium bromide and potassium chloride in lethal injection executions expired many years ago.

In an attempt to circumvent this expired statute of limitations, Smith presents his Eighth Amendment method-of-execution claim as though it originated in September 2014, when Alabama announced the substitution of midazolam in the ADOC protocol. He contends that this switch to midazolam is a "significant change in the state's execution protocol," *McNair*, 515 F.3d at 1177, which would render his Eighth Amendment claim timely filed.

Smith's arguments are insufficient to conceal the fact that it is untimely.  If Smith's challenge were simply to the substitution of midazolam in the three-drug protocol, then to comply with *Glossip*, he would be required to propose an alternative drug(s), such as sodium thiopental or pentobarbital, to be used as the first drug in the ADOC's three-drug protocol, essentially a return to the ADOC's pre-midazolam protocol.  Instead, Smith proposes the use of either pentobarbital, sodium thiopental, or a 500-milligram dose of midazolam, *administered in a one-drug protocol*, rather than in a three-drug protocol.  These one-drug protocol proposals strip away the veneer from Smith's claim, revealing its true identity:  a challenge to all three-drug protocols that employ a paralytic as the second drug and potassium chloride as the third drug.  In his response (Doc. # 170), Smith does not address Defendants' contention that his claim, in actuality, is a challenge against the use of any three-drug execution protocol.  And this claim accrued long ago.  It is clear from the face of Smith's complaint that this claim is untimely and due to be dismissed.

### 2.    *Eighth Amendment Consciousness Assessment Claim*

Smith also challenges as unconstitutional that portion of the ADOC's execution protocol known as the "consciousness assessment."  Specifically, he claims that during an execution, the ADOC employs a procedure that is performed by a correctional officer who has no medical training (Doc. # 160-4, ¶¶ 70–71), and that this procedure is an inadequate procedure to assess anesthetic depth, all in violation of the Eighth Amendment.  (Doc. # 160-4, ¶ 77.)  Smith requests that

Defendants be enjoined from executing him with a constitutionally deficient consciousness assessment.

The consciousness assessment has been a mandatory component of the ADOC's execution protocol since 2007. *See Arthur v. Thomas*, 674 F.3d 1257, 1263 n.6 (11th Cir. 2012) ("As alleged, Alabama assesses an inmate's consciousness through graded stimuli, first calling the inmate's name, then stroking the inmate's eyelids and finally pinching the inmate's arm."); *Arthur v. Allen*, CV-0722-WS-M, 2007 WL 4105113, at *2 (S. D. Ala. Nov. 15, 2007) ("The modifications to the protocol consist of the following additions to the preexisting procedures: (1) examination of the prisoner by an execution team member, following administration of the [first drug] but before administration of the [second drug], to assess his consciousness (by calling his name, gently stroking his eyelashes, and pinching his arm).").

Smith asserts that the ADOC's consciousness assessment is inadequate to determine the depth of anesthesia because it is performed by a correctional officer who has received no medical training. He points out that "[a]nesthesiologists receive extensive training in order to assess and monitor a patient's depth of anesthesia. Not only must they graduate from college and medical school, they must follow this with four years of training before they can be certified to practice anesthesiology without supervision." (Doc. # 160-4, ¶ 72.) He also states that anesthesiologists rely on medical "devices that monitor vital signs" in assessing anesthetic depth. (*Id.*, ¶ 73.)

Reading between the lines of Smith's claim, he appears to contend that in order for the ADOC's consciousness assessment to pass muster under the Eighth Amendment, the correctional officer who performs it must have received medical training to assess anesthetic depth, similar to that of an anesthesiologist, and that medical equipment must be used to monitor vital signs.

It is undisputed that the ADOC adopted the consciousness assessment as part of its execution protocol in October of 2007.  For purposes of this discussion, it can be assumed that this addition to the ADOC's protocol is a **"**significant change in the state's execution protocol." *McNair*, 515 F.3d at 1177; *but see Arthur v. Ala. Dep't of Corrs.*, 285 F. App'x 707, 705 (11th Cir. 2008) ("[I]t does not appear that Alabama's 26 October 2007 minimal changes to its execution protocol materially changed the procedures that were adopted in 2002.").  The statute of limitations for a constitutional challenge to the ADOC's consciousness assessment is two years. *See* Alabama Code § 6-2-38 (1975); *McNair*, 515 F. 3d at 1173.  Thus, Smith had to file any Eighth Amendment claim challenging the consciousness assessment by October of 2009, but he delayed filing this lawsuit until April 15, 2016.

Smith asserts that this claim is timely because it is based on facts which were not known about the consciousness assessment until it was performed during the Christopher Brooks execution in January 2016.  Specifically, Smith alleges:

> 74.  The events of Christopher Brooks'[s] execution indicate that Defendants' crude assessment conducted by an individual with no

medical training creates a substantial risk of pain in violation of the Eighth Amendment.

75.   Mr. Brooks'[s] left eye opened after the consciousness assessment and, assuming they even noticed, no one from the ADOC took any action.

76.  The fact that Mr. Brooks'[s] eye opened indicates that he was feeling sensation contemporaneous with, or prior to, injection of the paralytic.  Therefore, he was sensate at the time he was executed by injection of potassium chloride.

(Doc. # 160-4, ¶¶ 74–76.)

The foregoing allegations reflect that Smith's claim consists of a general complaint concerning the adequacy of the consciousness assessment.  There is no allegation that Brooks's execution involved any change, much less a significant change, in the ADOC's execution protocol concerning the consciousness assessment or that its performance is related to midazolam becoming a part of the lethal-injection protocol in 2014.  Similar to another general challenge to the ADOC's consciousness assessment that was dismissed as being time-barred, "[N]othing prevented [Smith] from challenging the training and qualifications of ADOC's execution personnel" concerning the consciousness assessment "within Alabama's two-year statute of limitations, well before midazolam was introduced into the protocol."  *Boyd v. Myers*, 2:14-cv-1017-WKW, 2015 WL 5852948, at *5 (M. D. Ala. Oct. 7, 2015). Like the claim in *Boyd*, Smith's claim has "[nothing] to do with the State's switch from pentobarbital to midazolam, and [Smith does] not allege anything specific about midazolam in [this] claim []."  *Id.*

13

Consequently, on the face of Smith's complaint, his challenge to the adequacy of the consciousness assessment is untimely and due to be dismissed as time-barred.

### 3.     *First, Eighth, and Fourteenth Amendment Access-to-Court Claim*

Smith further claims that the ADOC's policy prohibiting an inmate's counsel who is witnessing his execution from having access to a cellular or a land-line phone during the execution violates his right of access to the court under the First, Eighth, and Fourteenth Amendments.  (Doc. # 160-4, ¶¶ 78–85.)  Smith contends that enforcement of this ADOC policy will leave his counsel unable to contact the court and seek intervention if something arises during his execution that warrants a stay or other relief.  (Doc. # 160-4, ¶ 79.)  Smith asserts that the ADOC's policy prohibiting visitors from possessing cellular phones or devices within a facility should not apply to an inmate's counsel visiting the institution as a designated witness to an execution and that such policy improperly interferes with the attorney/client relationship.

As relief, Smith seeks to invalidate the ADOC's policy prohibiting the possession of cellular telephones, as applied to designated attorney witnesses, to protect his right of meaningful access to the court and to be free from cruel and unusual punishment.  Alternatively, Smith requests an order directing Defendants to provide a land-line telephone in the viewing room set aside for his witnesses, to which an attorney witness may have unfettered access during the execution.  (Doc. # 160-4 at 25.)

It is undisputed that the ADOC's long-standing policy prohibits visitors to a correctional facility from possessing cellular telephones or wireless devices within the correctional facility.  This policy applies to all visitors, even those who also happen to be counsel for a death-row inmate and are at the facility as designated witnesses to an execution.  There is no exception for attorneys in this instance; a visitor is a visitor.  The ADOC has not recently changed this policy; it has been in effect for many years.

To reiterate, "[a]ll constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought," *McNair*, 515 F. 3d at 1173.  The statute of limitations in Alabama is two years.  *Id*.  It is well settled that "absent a significant change in the state's execution protocol," Smith was required to file this claim within two years "of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed protocol."  *Id.* at 1177.  The statute of limitations for Smith expired on July 31, 2004.

Smith argues that this claim is timely because the factual basis for this claim originates from the execution of Christopher Brooks in January 2016, where Defendants denied Brooks's counsel's request for permission to possess a cell phone during his execution or to have access to a land-line telephone at that time.  Smith's argument is unpersuasive.  The events surrounding Christopher Brooks's execution did not give rise to this claim; neither do they render this claim timely.  Smith makes

15

no allegation that the ADOC has ever allowed visitors to its facilities to have cell phone access or other phone access during an execution or prior to the adoption of the ADOC's current protocol in September 2014.  This claim is simply another belatedly-raised claim that could have been raised years ago.  For this reason, Smith's claim is time-barred on the face of the complaint and due to be dismissed, similar to the First Amendment claim in *Roberts v. Myers*, 2:14-CV-1028-WKW, 2015 WL 1198666, at \*2-3 (M.D. Ala. Mar. 16, 2015) (Doc. # 21).

**B.** **Failure to State a Claim for Relief under Fed. R. Civ. P. 12(b)(6) and the Doctrine of Laches**

In addition to being time-barred, Defendants also submit that Smith's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim for which can be granted and because the complaint is barred by the doctrine of laches.  These aspects of Defendants' motion were addressed in the briefing.  Because the court concludes that Smith's complaint is due to be dismissed because all claims are time-barred, the court need not consider Defendants' remaining arguments for dismissal under Rule 12(b)(6) for failure to state a claim and for dismissal under the doctrine of laches.

## III. CONCLUSION

For the reasons stated, it is ORDERED as follows:

1.   Defendants' Consolidated Motion to Dismiss (Doc. # 160) is GRANTED IN PART, only with respect to Plaintiff Ronald Bert Smith.  The motion remains pending as to Plaintiffs Charles Lee Burton, Robert Bryant Melson, Geoffrey Todd West, and Torrey Twane McNabb.

2.   From the face of the Complaint, Smith's action is time-barred and is DISMISSED pursuant to Federal Rule of Civil Procedure 12(b)(6).

3.   Judgment is entered in Defendants' favor on Smith's action, *Ronald Bert Smith v. Jefferson S. Dunn, et al*., 2:16-CV-0269-WKW (M.D. Ala.).

4.   Pursuant to Federal Rule of Civil Procedure 54(b), and the court's finding that there is no just reason for delay, a Final Judgment in Defendants' favor on all claims asserted by Smith will be entered contemporaneously with this Memorandum Opinion and Order.

5.   This is a FINAL and APPEALABLE Order as to Ronald Bert Smith.

DONE this 18th day of November, 2016.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE

17