IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CAREY DALE GRAYSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-CV-0316-WKW |
| | ) | |
| JEFFERSON S. DUNN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

and,

| | | |
|---|---|---|
| CHARLES LEE BURTON, | ) | |
| ROBERT BRYANT MELSON, | ) | |
| GEOFFREY TODD WEST, | ) | |
| TORREY TWANE MCNABB, | ) | CASE NOS.  2:16-CV-0267-WKW |
| | ) | 2:16-CV-0268-WKW |
| Plaintiffs, | ) | 2:16-CV-0270-WKW |
| v. | ) | 2:16-CV-0284-WKW |
| | ) | |
| JEFFERSON S. DUNN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

and,

| | |
|---|---|
| JEFFREY LYNN BORDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CASE NO. 2:16-CV-0733-WKW |
| v. | ) |
| | ) |
| | ) |
| JEFFERSON S. DUNN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

## I.  BACKGROUND

Plaintiff Carey Dale Grayson is an Alabama death-row inmate who is in the custody of the Alabama Department of Corrections ("ADOC") awaiting his presently unscheduled execution.  In 2012, Grayson filed an action under 42 U.S.C. § 1983 challenging the constitutionality of Alabama's method-of-execution, alleging violations of both the Eighth and Fourteenth Amendments to the United States Constitution.  (Docs. # 1, 37, 48.)  In 2013 and 2014, four other Alabama death-row inmates[1] filed similar actions under 42 U.S.C. § 1983 challenging the constitutionality of Alabama's method-of-execution.  Ultimately, their cases were consolidated as the Midazolam Litigation.  (Docs. # 53, 59.)

---

[1] Demetrius Frazier, David Lee Roberts, Robin Dion Myers, and Gregory Hunt.

2

The Eighth Amendment claims of Plaintiffs Grayson, Frazier, Roberts, Myers, and Hunt have been resolved.  (*See* Docs. # 192, 193.)  In his Second Amended Complaint (Doc. # 48), Grayson also raised a Fourteenth Amendment equal protection claim for Defendants' failure to perform adequate consciousness assessments in prior executions. (Doc. # 48 at 19–21.)  This claim remains pending.

When resolving Grayson's Eighth Amendment claim (*see* Doc. # 192), the court noted that Grayson's Fourteenth Amendment claim concerning the ADOC's consciousness assessment is the same claim that was resolved in *Arthur v. Dunn*, 2:11-cv-438 (M.D. Ala. Apr. 15, 2016) (Doc. # 359 at 47–55).  The court further noted that no dispositive motion on this claim had been filed in Grayson's case and that there is no representation in the record as to the evidence on this claim – particularly, whether there is new or different evidence, or essentially the same evidence produced in *Arthur*.  For that reason, on December 9, 2016, the court directed that Defendants "either file a dispositive motion on the Fourteenth Amendment claim, inform the Court that a trial is necessary on that claim, or otherwise address disposition of the claim."  (Doc. # 225 at 2.)  Alternatively, the court gave the parties the option of addressing this issue jointly.  *Id.*

In compliance with December 9 Order, the parties filed a Joint Notice of Stipulation of Facts and Request for Final Ruling on Grayson's Fourteenth

3

Amendment claim. (Doc. # 226.) This matter is before the court for consideration of that filing.

## II. GRAYSON'S FOURTEENTH AMENDMENT CLAIM

The parties jointly stipulate to the following facts regarding Grayson's Fourteenth Amendment equal protection claim:

### JOINT STIPULATION OF FACTS

1. Grayson's equal protection claim is substantially similar to the equal protection claim that was litigated and resolved in *Arthur*.

2. The parties do not intend to produce any evidence relating to Grayson's equal protection claim that is new or different from what was presented in *Arthur* concerning that same claim.

3. If the case proceeded to trial, the parties intend to produce the same evidence that was presented in *Arthur* concerning Grayson's equal protection claim. Specifically, at trial, Grayson would call the following witnesses:

   a. Matt Schultz, an attorney employed by the Federal Defender's Office in Montgomery, AL;

   b. Stephen Ganter, an attorney employed by the Federal Defender's Office in Montgomery, AL; and

   c. Christine Freeman, an attorney employed by the Federal Defender's Office in Montgomery, AL.

   Defendants would call the following witnesses:

   a. Anne Adams Hill, the ADOC general counsel;

   b. G.C., an employee of the ADOC and former warden at Holman Correctional Facility;

      c.     A.P., a former warden at Holman Correctional Facility;

      d.     W.H., a retired ADOC employee;

      e.     D.C., a retired ADOC employee; and

      f.     C.S., an ADOC employee.

    4.     The parties further stipulate that if the witnesses noted in paragraph 3 were called to testify at trial, their testimony would be the same as the testimony they presented in *Arthur* concerning Grayson's equal protection claim.

Joint Notice of Stipulation of Facts and Request for Final Ruling (Doc. # 226 at 3-4.)

    In light of these stipulated facts, the parties jointly state and request:

    Based on the above stipulations of fact, the parties jointly request that this Court accept the testimony presented in *Arthur* from the witnesses noted in paragraph 3, whether by live testimony or by designated deposition testimony, and consider such testimony in this case. The parties further request that this court take judicial notice of the testimony submitted into evidence in *Arthur* from the witnesses noted in paragraph 3 and consider such evidence as admitted in Grayson's case. Finally, the parties request that upon this Court's acceptance of such evidence, Grayson's pending equal protection claim be submitted to this Court for a final ruling and judgment on the merits of the claim.

*Id.* at 4-5.

## III. DISCUSSION

Upon consideration of the parties' Joint Stipulation of Facts and request for resolution of Grayson's Fourteenth Amendment equal protection claim, the court

5

concludes that Defendants are entitled to judgment on this claim. The court reached this conclusion by comparing Grayson's factual allegations supporting this claim contained in his Second Amended Complaint with the evidence Thomas Arthur presented at trial on the same equal protection claim that was tried on January 12-13, 2016. *See Arthur v. Dunn*, 2:11-cv-438 (M.D. Ala. April 15, 2016) (Doc. # 359 at 22-54). This comparison is detailed below:

### A.   *Grayson's factual allegations*

Grayson asserts a Fourteenth Amendment equal protection claim "because of inconsistent performance of the consciousness test by untrained individuals." (Doc. # 48 at 19.) To support that claim, Grayson alleges:

> **The executions of Eddie Powell and Jeff Land indicate that Defendants do not follow their own execution protocol, particularly in the consciousness assessment.**
>
> . . .
>
> 47. A witness to Jeff Land's execution in Alabama in 2010, which was three years after the graded stimuli were first included in the protocol, testified that he did not see the correctional officer perform the third graded stimuli -- the so-called pinch test.
>
> 48. Witnesses to the execution in Alabama of Eddie Powell on June 16, 2011, testified that the corrections officer did not perform the third graded stimuli.
>
> . . .
>
> 50. There is no compelling reason for "selectively introducing risk into some executions but not others." In failing to ensure that all executions contain all the graded stimuli contained in the State's

6

> expert's description of the protocol, Defendants selectively introduce risk into executions.
>
> 51. Defendants' failure to abide by their own purported procedural safeguards to assess anesthetic depth violates Grayson's right to Equal Protection under the United States Constitution.

(Doc. # 48 at 12-13) (footnotes omitted).

Grayson's allegation that the correctional officer did not perform the pinch test at Jeff Land's execution is based on Stephen P. Ganter's testimony at an evidentiary hearing on October 18, 2012, in *Arthur v. Thomas*, 2:12-cv-438 (M.D. Ala. Oct. 18, 2012) (Hearing Tr. at 304) (Doc. # 48-1). Ganter testified that he did not see the correctional officer touch or pinch Land's arm. *Id.*

Grayson's allegation that the correctional officer did not perform the pinch test at Eddie Powell's execution is based on Matt Schulz's testimony at this same evidentiary hearing in *Arthur* on October 18, 2012. *Id.* (Hearing Tr. at 259) (Doc. # 48-1). Schulz testified that he did not see anyone pinch Powell's arm.

    **B.**    ***Evidence at the <u>Arthur</u> trial of the pinch test on Land and Powell***

Arthur's Second Amended Complaint raised the same Fourteenth Amendment equal protection claim as Grayson that the Defendants had inconsistently performed all parts of the consciousness assessment in that they failed to perform the pinch test at numerous executions, including the Jeff Land and Eddie Powell executions. *See Arthur v. Thomas*, 2:11-cv-438-WKW (M. D. Ala. 2011) (Doc. # 197, ¶ 114 therein).

At the trial on this claim in January 2016, Arthur's evidence was eyewitness testimony from Christine Freeman, Stephen P. Ganter, Matt Schulz, and Don Blocker that Defendants either failed to perform the pinch test at the Land and Powell executions, as well as at other executions, or that they did not see the test performed. Ganter testified that he did not see the correctional officer perform the pinch test on Land, and Schulz testified that he did not see the correctional officer perform the pinch test on Powell. The testimony from Ganter and Schulz at Arthur's trial in January 2016 was consistent with their testimony concerning the pinch test on Land and Powell at the evidentiary hearing in *Arthur* on October 18, 2012.

### C. The court's findings in <u>Arthur</u> regarding the pinch test

The evidence was conflicting concerning Defendants' performance of the pinch test at the Land and Powell executions, among others. The court weighed the evidence and made the following findings on Arthur's pinch test claim:

> 4. There is some conflicting testimony as to whether the ADOC has consistently performed all three components of the consciousness assessment in all executions after it was implemented. For instance, Matt Schulz, Stephen Ganter, Christine Freeman, and Don Blocker testified that they did not observe the pinch test, the third component, being performed in the executions they have attended. On the other hand, Hill, G.C., A.P., W.H., D.C. and C.S. testified that the ADOC has performed all three components of the consciousness assessment, including the pinch test, in all executions they have witnessed or participated in after the consciousness assessment was adopted.
>
> The court credits the testimony of Hill, G.C., A.P., W.H., D.C., and C.S. over the testimony of those eyewitnesses who

8

testified that they did not see a pinch test performed at the executions they have attended. The basis for this finding is twofold.

First, Hill, G.C., A.P., W.H., D.C., and C.S. are either present or former ADOC employees who are knowledgeable about the components of the consciousness assessment and, with the exception of C.S., have been trained as to its significance and how it is performed. C.S. is a participant in the execution chamber. Hill, in her role as the ADOC's general counsel, assisted in the development of the consciousness assessment and in providing training to prison personnel in how the consciousness assessment should be conducted. These individuals are aware of the consciousness assessment and are trained to understand how, why, and when it is performed. However, they are not trained by medical professionals or as medical professionals.

Second, the testimony of those eyewitnesses who stated that they did not see the pinch test performed during the executions they attended is less probative for a number of reasons. For one, "didn't see" testimony is fundamentally less direct and less probative than "didn't happen" testimony. With the exception of Blocker, their testimony was that they "didn't see" the pinch, or words to that effect, not that it categorically did not happen. Blocker admitted that he might have missed the pinch altogether.  Ganter admitted the correctional officer blocked his view of Powell's arm.  Moreover, at the time Matt Schulz and Christine Freeman attended Eddie Powell's execution, and at the time Stephen Ganter and Christine Freeman attended Michael Jeffrey Land's execution, they did not know that there was a consciousness assessment that would be conducted during those executions. Thus, they also had no knowledge of the three components of the consciousness assessment, and they did not know the specifics of the consciousness assessment as to when or how it would be conducted.  Because they neither knew that a consciousness assessment would be taking place nor what it was supposed to consist of, they did not know to be on the lookout for the performance of the pinch test.  The court finds their testimony, albeit truthful from their perspective and to the best of their recollection and knowledge, less direct and less probative on the specific factual question.

> As to Don Blocker, for similar reasons the court also assigns less weight to his testimony than to that of the present and former ADOC employees. Blocker was a volunteer lay minister at Holman who had not been trained in the nuances of the consciousness assessment. He also qualified his answers and admitted that he could have missed components of the consciousness assessment.
>
> 5. Based on the court's findings that the testimony of Hill, G.C., A.P., W.H., D.C., and C.S. is more probative and deserves more weight than the testimony of Matt Schulz, Stephen Ganter, Christine Freeman, and Don Blocker, the court further finds that the evidence establishes that the pinch test was performed in all executions that the ADOC has conducted after the ADOC adopted the consciousness assessment and incorporated it as a mandatory part of the written execution protocol. In particular, based upon the testimony of the captains who have personally conducted the consciousness assessment and whose credibility was not seriously challenged, Arthur has not established by a preponderance of the evidence that all components of the consciousness assessment were not performed in every execution after the consciousness assessment was added to the protocol. The contradictory evidence does not overcome the direct testimony of the participants who say without equivocation that they performed the assessment.
>
> 6. Because the court finds that the consciousness assessment has been adequately performed in every instance in which it was required, no deficiency in training, practice, or procedure is found.

*Arthur v. Thomas*, 2:12-cv-438-WKW (M. D. Ala. April 15, 2016) (Doc. # 359 at 49-52 therein.) (footnote omitted).

On the above findings, the court concluded that Defendants were entitled to judgment on Arthur's pinch test claim:

> 2. The evidence presented on Arthur's claim was insufficient to prove that that the ADOC has inconsistently applied the protocol's mandatory consciousness assessment by failing to perform the pinch test during some executions, or has otherwise deviated substantially

10

>from its execution protocol.  The credible testimony of Hill, G.C., A.P., W.H., D.C., and C.S. establishes that the pinch test has been applied uniformly during executions; simply put, Arthur has not established past disparate treatment or the likelihood of disparate treatment in his own execution. . . .

*Arthur v. Thomas*, *supra* (Doc. # 359 at 52-53 therein.)

### D.     *Juxtaposition of the <u>Arthur</u> and <u>Grayson</u> equal protection claims*

When Arthur's and Grayson's claims are compared, they are similar in that both originated with the same factual allegations in their respective complaints that the correctional officer did not perform the pinch test at the Powell and Land executions.  In 2012, Arthur's allegations were deemed sufficient to state a plausible claim and to avoid summary dismissal.  *See Arthur v. Thomas*, 674 F. 3d 1257, 1263 (11th Cir. 2012).  At trial, Arthur's evidence was from four eyewitnesses, including Ganter, Schulz, and Freeman, whose trial testimony conformed to their testimony at the evidentiary hearing in *Arthur* in October 2012.  Their testimony, in addition to Arthur's other eyewitness testimony, was insufficient to carry the day for Arthur on this claim.[2]

This same Ganter, Schulz, and Freeman testimony at the evidentiary hearing in *Arthur* in October 2012 is the foundation for Grayson's pinch test claim as

---

[2] The court credited the testimony of Hill, G.C., A.P., W.H., D.C., and C.S. over the testimony of Ganter, Schulz, Freeman, and Blocker who testified that they did not see a pinch test performed at the executions they have attended.  *See Arthur v. Thomas*, No. 2:12-cv-438-WKW (M.D. Ala. April 15, 2016) (Doc. # 359 at 49 therein.)

11

presented in his Second Amended Complaint. (Doc. # 48 at 12-13.) As the record stands, the Ganter, Schulz, and Freeman testimony is the only evidence Grayson has to support this claim. In *Arthur*, the court found the Ganter and Schulz testimony less direct and less probative, gave it less weight, and credited testimony from defense witnesses over that of Ganter and Schulz, as well as Arthur's other eyewitnesses, Freeman and Blocker.

Because Grayson has no evidence other than the Ganter, Schulz, and Freeman testimony to support his pinch test claim, the court's previous finding in *Arthur* is essentially the *coup de grace* on this claim. Arthur, who offered eyewitness testimony in addition to that from Ganter, Schulz, and Freeman, did not prevail on his pinch test claim. Grayson is armed only with the Ganter, Schulz, and Freeman testimony. Since he has less evidence to offer than Arthur did at trial, Grayson, *a fortiori*, cannot prevail on this same pinch test claim.

While Defendants did not move for summary judgment on Grayson's Fourteenth Amendment equal protection claim, for the reasons stated above, had they done so, they would have prevailed because Grayson's proof is insufficient to survive a motion for summary judgment. By their Joint Stipulation of Facts, the parties recognize that if Grayson were to proceed to trial on this Fourteenth Amendment claim, given the evidence he has to offer, which is less than the evidence offered in *Arthur*, he would not prevail. At the parties' joint request, the court

accepts the testimony presented in *Arthur* on his Fourteenth Amendment equal protection claim, takes judicial notice of that testimony, and considers that evidence as though it has been admitted in Grayson's case.

The parties' joint request for a final ruling on Grayson's Fourteenth Amendment claim, based on the record as it stands, is in the interest of judicial economy, will preserve limited judicial resources, and will minimize litigation expenses to all parties. The court applauds the parties for recognizing this fact.

## IV. CONCLUSION

Upon consideration of the parties' Joint Notice of Stipulation of Facts and Request for Final Ruling, it is ORDERED that:

1. Judgment is entered in Defendants' favor on Grayson's Fourteenth Amendment equal protection claim.

2. Pursuant to Federal Rule of Civil Procedure 54(b), and the court's finding that there is no just reason for delay, a Final Judgment in Defendants' favor on all claims asserted by Plaintiff Carey Dale Grayson will be entered contemporaneously with this Memorandum Opinion and Order.

3. This is a FINAL and APPEALABLE Order as to Plaintiff Carey Dale Grayson.

DONE this 28th day of February, 2017.

                                        /s/ W. Keith Watkins
                            CHIEF UNITED STATES DISTRICT JUDGE