# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 06, 2017

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  17-11536-P
Case Style:  Geoffrey West, et al v. Commissioner, Alabama DOC, et al
District Court Docket No:  2:12-cv-00316-WKW-CSC

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call David L. Thomas at (404) 335-6171.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Elora Jackson
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11536
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cv-00316-WKW-CSC


CHARLES LEE BURTON, 2:16-cv-0267

Consol Plaintiff - Appellant,

versus

WARDEN,
COMMISSIONER, ALABAMA DOC,

Defendants - Appellees.

_____

ROBERT BRYANT MELSON, 2:16-cv-0268

Consol Plaintiff - Appellant,

versus

WARDEN,
COMMISSIONER, ALABAMA DOC,

Defendants - Appellees.

_____

GEOFFREY TODD WEST, 2:16-cv-0270

                                        Consol Plaintiff - Appellant,

versus

WARDEN,
COMMISSIONER, ALABAMA DOC,

                                        Defendants - Appellees.

_____

TORREY TWANE MCNABB, 2:16-cv-0284

                                        Consol Plaintiff - Appellant,

versus

WARDEN,
COMMISSIONER, ALABAMA DOC,

                                        Defendants - Appellees.

_____

JEFFREY LYNN BORDEN, 2:16-cv-0733

                                        Consol Plaintiff - Appellant,

versus

WARDEN,
COMMISSIONER, ALABAMA DOC,

                                        Defendants - Appellees.

2

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(September 6, 2017)


Before: TJOFLAT, ROSENBAUM and JILL PRYOR, Circuit Judges.

TJOFLAT, Circuit Judge.

This appeal involves four of a group of twelve cases filed in the Middle District of Alabama by death row inmates challenging, under 42 U.S.C. § 1983, the constitutionality of the State's lethal injection protocol.[1]  In a single order, the District Court dismissed the four cases pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.  We reverse the District Court's dismissal of the cases and remand them for further proceedings.

## I.

Since July 1, 2002, Alabama has employed lethal injection as its preferred method of executing inmates sentenced to death in the State.[2]  Act 2002-492, 2002

_____

[1] Appellant Robert Bryant Melson was an initial party to this appeal.  Melson was executed on June 8, 2017, while briefing was still pending.  On June 2, 2017, this Court stayed Melson's execution pending resolution of this appeal.  However, on June 7, 2017, the United States Supreme Court granted Alabama's motion to vacate the stay of execution granted by this Court and accordingly allowed Melson's execution to proceed.

[2] A person sentenced to death in Alabama can still elect to die by electrocution instead of lethal injection.  *See* Ala. Code § 15-18-82.1(a) (explaining "[a] person convicted and sentenced

3

Ala. Laws 1243 (codified at Ala. Code § 15-18-82.1).  Since that time, the State's

lethal injection procedure has involved the sequential injection of three drugs.  *See*

*Williams v. Allen*, 496 F.3d 1210, 1214 (11th Cir. 2007) (noting that Alabama's

lethal injection protocol consisting of three drugs had remained unchanged "since

its inception in 2002").  The United States Supreme Court described an identical

protocol, as implemented by the State of Kentucky, in *Baze v. Rees*, 553 U.S. 35,

128 S. Ct. 1520 (2008) (plurality opinion):

> The first drug, sodium thiopental . . . , is a fast-acting barbiturate
> sedative that induces a deep, comalike unconsciousness when given in
> the amounts used for lethal injection. The second drug, pancuronium
> bromide . . . , is a paralytic agent that inhibits all muscular-skeletal
> movements and, by paralyzing the diaphragm, stops respiration.
> Potassium chloride, the third drug, interferes with the electrical
> signals that stimulate the contractions of the heart, inducing cardiac
> arrest. The proper administration of the first drug ensures that the
> prisoner does not experience any pain associated with the paralysis
> and cardiac arrest caused by the second and third drugs.

*Id.* at 44, 128 S. Ct. at 1527 (citations omitted).

On April 26, 2011, Alabama substituted pentobarbital, "a short-acting

barbiturate" sedative,[3] for sodium thiopental, as the first drug in its three-drug

protocol.  *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011) (per curiam).

Then, on September 10, 2014, the State substituted midazolam, a benzodiazepine

---

to death for a capital crime at any time shall have one opportunity to elect that his or her death
sentence be executed by electrocution").

        [3] *Nembutal*, RxList, http://www.rxlist.com/nembutal-drug.htm (last visited Sept. 6, 2017).

sedative,[4] for pentobarbital.  *Brooks v. Warden*, 810 F.3d 812, 816–17 (11th Cir.

2016).  It also substituted rocuronium bromide for pancuronium bromide as the

second drug.  *Id.* at 817.  Potassium chloride remained the third drug.  *Id.*

In the four cases at hand, the appellants ("Appellants"), death row prisoners

awaiting execution, claim that if they are executed in accordance with the lethal

injection protocol now in place, they will suffer "cruel and unusual punishment" in

violation of the Eighth Amendment.[5]  They seek an order under 42 U.S.C. § 1983

enjoining the Alabama Department of Corrections ("ADOC") from executing them

pursuant to that protocol.[6]  In *Glossip v. Gross*, 135 S. Ct. 2726, 2737 (2015), the

Supreme Court made clear that the "controlling opinion in *Baze*" set forth the two-

---

[4] Midazolam is "a sedative of the benzodiazepine class."  *Midazolam*, *Miller-Keane Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health* 1130 (Marie T. O'Toole et al. eds., 7th ed. 2003).

[5] The Eighth Amendment applies to the states through the Fourteenth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 344–45, 101 S. Ct. 2392, 2398 (1981).

[6] Appellants McNabb, West, and Burton filed their complaints in April 2016.  Their complaints raised identical claims.  The District Court consolidated those cases for discovery and trial on April 28, 2016.  Borden filed his complaint, which presented the same claims, on September 7, 2016.  The District Court consolidated his case with the others on January 26, 2017.  Prior to consolidating Appellants' cases, the District Court consolidated the cases of Demetrius Frazier, David Lee Roberts, Robin Dion Myers, Gregory Hunt, Carey Dale Grayson, and Ronald Bert Smith, all challenging Alabama's three-drug injection protocol, for discovery and trial.  We addressed their joint appeals in *Grayson v. Warden, Comm'r, Ala. DOC* (*Frazier*), No. 16-16876, 2017 WL 3815265 (11th Cir. Sept. 1, 2017).  The District Court refers to all of the cases challenging the three-drug protocol collectively as the "Midazolam Litigation."  In addition to an injunction barring their executions pursuant to the three-drug protocol, Appellants seek other injunctive relief: an order requiring the ADOC to, among other things, "disclose to Plaintiff and his counsel the lethal injection protocol," "submit any proposed changes to the execution protocol to the Court immediately upon making them," and disclose "when [the drugs used in the protocol] were purchased, where they were purchased from, and their National Drug Code identifying number."

pronged standard a plaintiff must satisfy "to succeed on an Eighth Amendment method-of-execution claim."  The first prong requires the prisoner to demonstrate that the challenged method of execution presents "a 'substantial risk of serious harm.'"  *Id.* (quoting *Baze*, 553 U.S. at 50, 128 S. Ct. at 1531).  That is, the method must "present[] a risk that is '*sure or very likely* to cause serious illness and needless suffering, and give rise to sufficiently *imminent* dangers.'"  *Id.* (quoting *Baze*, 553 U.S. at 50, 128 S. Ct. at 1531).  The second requires the prisoner to "identify an alternative that is 'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'"  *Id.* (quoting *Baze*, 553 U.S. at 52, 128 S. Ct. at 1532).  Showing "a slightly or marginally safer alternative" is insufficient to mount a successful challenge to a State's method of execution.  *Id.*  (quoting *Baze*, 553 U.S. at 51, 128 S. Ct. at 1531).[7]

Appellants contend that the ADOC's current protocol presents a substantial risk of serious harm that comports with *Baze*'s definition.  They argue that the risk is substantial because midazolam, a sedative, is not an analgesic like sodium thiopental and pentobarbital.  Consequently, they assert midazolam does not produce the sustained state of anesthesia necessary to render them insensate to the intolerable pain that will be generated by subsequent injections of rocuronium

---

[7] Because the plurality in *Baze* first articulated the standard governing Eighth Amendment method-of-execution challenges later applied by the Supreme Court in *Glossip*, we refer to the law governing Plaintiffs' claim here as the *Baze* standard.

bromide and potassium chloride.  To satisfy *Baze*'s second prong, Appellants also propose three alternative methods of execution involving single injections of either sodium thiopental, compounded pentobarbital, or a 500-milligram bolus of midazolam.[8]

Before us for review is the District Court's Memorandum Opinion and Order of March 31, 2017, granting the ADOC's motion to dismiss Appellants' complaints pursuant to Federal Rule of Civil Procedure 12(b)(6).[9]  In its order, the Court concluded that Appellants claims were "identical" to the claims raised by Ronald Bert Smith, and dismissed by the District Court under Rule 12(b)(6), in *Grayson v. Dunn* (*Smith*), 221 F. Supp. 3d 1329 (M.D. Ala., Nov. 18, 2016), *aff'd sub nom.*, *Grayson v. Warden*, 672 F. App'x 956 (11th Cir. 2016).[10]

---

[8] Appellants also raise two additional claims concerning Alabama's execution procedures: (1) a claim that Alabama's consciousness assessment violates the Eighth Amendment's prohibition of cruel and unusual punishments because it cannot adequately determine whether a prisoner is insensate prior to the administration of the second and third drugs, and (2) a claim that "their right to meaningful access to the courts requires their counsel, as a witness to their executions," to "have access to a cellular phone or landline telephone until their executions are complete."  In this decision, we address only the District Court's dismissal of Appellants' Eighth Amendment midazolam claim.  On remand, the District Court should consider Appellants' additional claims in a manner not inconsistent with this opinion.

[9] The order also denied Appellants' motion for leave to amend their identical complaints. Appellants sought leave to correct a "drafting error," add nitrogen asphyxiation as a proposed alternative to the ADOC's current execution protocol, and include additional facts concerning the December 2016 execution of Ronald Bert Smith.  The District Court concluded that allowing them to do so would be "futile," because Appellants' proposed amendments would not "change the fact that the underlying claim they seek to amend is untimely."

[10] Smith's case, like McNabb, West, and Burton's cases, was filed in April 2016.  The District Court consolidated Smith's case with those cases on April 28, 2016.

In *Smith*, the District Court adopted the ADOC's reading of Smith's complaint as a "general challenge" to its three-drug protocol that uses a paralytic and potassium chloride as the second and third drugs. *See id.* at 1333. The Court observed that Smith's response to the ADOC's motion to dismiss did "not address Defendants' contention that his claim, in actuality, is a challenge against the use of any three-drug execution protocol." *Id.* at 1334. Therefore, the Court concluded that the challenge should have been brought during the two-year statute of limitations period that began to run in July 2002, when Alabama chose lethal injection over the electric chair. *Id.* Hence, it dismissed Smith's complaint as time-barred. *Id.* at 1335. Smith appealed that decision to this Court, and we affirmed the District Court's decision in December 2016. *Smith*, 672 F. App'x at 958.

Because the District Court found that Appellants' complaints were identical to Smith's complaint, the Court concluded that its determination regarding the true nature of Smith's complaint as a "general challenge" to the three-drug protocol was "equally applicable" in Appellants' cases. Thus, it held, "[Appellants'] claims, just like Smith's claims, are time-barred."

Appellants ask us to reverse the District Court's dismissal of their Eighth Amendment claims on the basis that the District Court erred in construing their complaints as "general challenge[s]," in the face of allegations that plainly

8

challenge the protocol on the basis that midazolam would not render them insensate.  In response, the ADOC contends dismissal was proper because "this Court has already considered and rejected [Appellants'] claims in their co-plaintiff's case."  In other words, the ADOC avers, because the District Court agreed with the ADOC's reading of Smith's complaint as a general challenge to the State's use of a three-drug lethal injection protocol, and because a panel of this Court did not disturb that interpretation, our decision in *Smith* precludes Appellants' claims in *this* case.

After carefully considering the record and the parties' briefs, we hold that dismissal of Appellants' claims was improper.  We do so because we are not persuaded by the ADOC's argument—which the District Court accepted in *Smith* and this case—that Appellants' complaint is a general challenge to the State's three-drug lethal injection protocol.  We also note that our decision today does not contradict the law-of-the-case doctrine, because the panel's holding in *Smith* does not apply in Appellants' cases and thus does not dictate our decision in this appeal. We therefore reverse the District Court's dismissal and remand the case for further proceedings.

## II.

The ADOC argues that we should affirm the District Court's dismissal of Appellants' cases for two independent reasons.  First, it argues that our holding in

9

*Smith* is the law of the case that binds our decision in this appeal, because Smith's case and Appellants' cases—having been included in the "Midazolam Litigation"—have now become the same case. Second, the ADOC asserts that Appellants' complaints are time-barred because they do not really challenge the State's use of midazolam as the first drug in its three-drug protocol. In actuality, the ADOC argues, the complaints are, "on [their] face," nothing more than "general challenge[s]" to the three-drug lethal injection protocol Alabama has used to carry out capital punishment sentences since 2002. We address the ADOC's arguments in order.

## A.

We begin our analysis by dispensing with the ADOC's law-of-the-case argument. The law-of-the-case doctrine holds that "findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings *in the same case* in the trial court or on a later appeal." *Westbrook v. Zant*, 743 F.2d 764, 768 (11th Cir. 1984) (emphasis added) (quoting *Dorsey v. Continental Cas. Co.*, 730 F.2d 675, 678 (11th Cir.1984)).

Here, the ADOC argues, since the District Court consolidated Smith's case and Appellants' cases as part of the "Midazolam Litigation," all of those cases are now one case, such that *Smith*'s affirmance of the District Court's dismissal of Smith's complaint now dictates our decision in this appeal. Thus, the ADOC

10

argues, since the panel in *Smith* accepted the District Court's reading of Smith's

complaint as a time-barred "general challenge" to Alabama's three-drug lethal

injection protocol, we must now read Appellants' complaints as time-barred

general challenges as well.

We disagree.  Appellants and Smith's shared status as part of the

"Midazolam Litigation" does not change the fact that they are still separate cases.[11]

_____

[11] Although Smith's case and Appellants' cases were filed contemporaneously and
contained identical complaints, Smith's case took a different procedural route than Appellants'
cases.  Smith's execution was scheduled to take place on December 8, 2016.  In its motion to
dismiss Smith's complaint, the ADOC offered Smith an alternative method of execution.  It
offered to consent to Smith's execution pursuant to a single-drug protocol consisting of
midazolam.  On November 9, 2016, the District Court entered an order for the purpose of
"explor[ing] the midazolam option pled and urged by Mr. Smith and presently offered by
Defendants."  The Court reasoned that this alternative method of execution was appropriate
based on Smith's own allegations.  It explained that Smith "pled it and offered the option as
viable, readily implemented and available, and Defendants have accepted the offer."  Moreover,
it observed, "[t]he parties all agree that (1) midazolam is available, (2) it is feasible, (3) it is
readily implementable, and (4) it is not risky with regard to unnecessary pain and suffering."
Thus, the Court ordered the ADOC to submit to the Court "on or before November 14, 2016, a
current one-drug execution protocol and a current three-drug execution protocol for in camera
inspection."  It also ordered Smith to show cause, by November 16, 2016, "why the court should
not order Defendants to execute him using the method pled in his complaint, viz., a large initial
dose of midazolam, followed by continuous infusion."

Smith responded by agreeing that the "Court can and should order the Defendants to use
Mr. Smith's identified single-drug midazolam alternative."  But Smith also argued that, before
implementing the proposed execution protocol, the ADOC must, to the Court's satisfaction,
"adopt[] an adequate protocol, including accounting for all necessary equipment and sufficient
training to execute Mr. Smith using his proposed single-drug midazolam alternative."  As part of
that protocol, Smith argued that the ADOC should follow the recommendation of Smith's expert
witness, Dr. Tackett, who recommended "a loading dose between 2.5 and 3.75 grams" of
midazolam "followed by a continuous IV infusion until death."

The ADOC, replying on November 18, rejected Smith's proposal that the ADOC employ
Dr. Tackett's formulation of the midazolam alternative, contending that his proposed formulation
was a material departure from the formulation Smith described in his complaint, "a one-drug
protocol consisting of a 500-milligram bolus of midazolam followed by a continuous infusion."

That the District Court consolidated cases challenging the State's midazolam protocol *for purposes of discovery and trial* did not transform them into a single case. Here, we direct the parties to our law-of-the-case discussion in *Grayson v. Warden, Comm'r, Ala. DOC* (*Frazier*), No. 16-16876, 2017 WL 3815265 (11th Cir. Sept. 1, 2017), in which we reversed the District Court's entry of summary judgment in favor of the ADOC in four of the consolidated cases after denying the ADOC's Rule 12(b)(6) motion to dismiss. In *Frazier*, we discussed at length why the cases forming the "Midazolam Litigation" are not the same case for law-of-the-case purposes. *Id.* at *18–29. As we explained there, many of the cases consolidated by the District Court were at various stages of litigation when joined together, and many followed entirely different procedural routes after consolidation.[12]

Indeed, compare Smith's case with Appellant Borden's case. The District Court entered judgment as to Smith on November 18, 2016. Borden's case was not consolidated until January 2017. How then can the ADOC now argue that

---

On receiving the ADOC's reply to Smith's response to its order to show cause, the Court realized that Smith and the ADOC had reached an impasse. Thus, the Court entered an order abandoning further consideration of the midazolam alternative and granted the ADOC's motion to dismiss.

[12] For example, compare the cases at issue in *Frazier* with the cases at issue in *Smith* and this appeal. In *Frazier*, the cases took the route of full discovery and proceeded to summary judgment. *Frazier*, 2017 WL 3815265, at *23. In *Smith* and this case, the cases took the route of no discovery and the District Court based its dispositive ruling on the pleadings alone. In fact, Smith and Appellants' cases were consolidated *after* discovery was closed in the *Frazier* appellants' cases. *Id.*

Smith's failure to respond to the ADOC's interpretation of his complaint must be imputed to Borden?  It cannot: so far as the law-of-the-case doctrine is concerned, the cases are not and cannot be one and the same.  Simply put, "consolidating" multiple cases brought by multiple parties against multiple defendants for the purpose of streamlining discovery and trial does not transform those cases into "one case" such that the law-of-the case doctrine applies.

Even assuming that Smith's case and Appellants' cases are one, *Smith* cannot dictate our decision here.  In *Frazier*, we explained that *Smith* could not apply to that case because the District Court expressly stated that its decision only applied to Smith's case, and not the four other cases that were filed contemporaneously with Smith's.  What's more, the *Smith* panel's decision pertained only to Smith.  As we noted in *Frazier*, *Smith* had no application in the four other contemporaneously filed cases.  *Frazier*, 2017 WL 3815265, at *28.  Thus, the ADOC's law-of-the-case argument fails.

B.

Having set aside the ADOC's law-of-the-case argument, we consider the fulcrum of this appeal: whether Appellants' Eighth Amendment claim is sufficient to survive the ADOC's Rule 12(b)(6) motion to dismiss.  We must first determine whether the Complaint states a claim for relief under the governing legal standard. We review a district court's decision to grant a motion to dismiss *de novo*.

13

*Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002).  When

considering a motion to dismiss, we "accept as true the facts as set forth in the

complaint and draw all reasonable inferences in the plaintiff's favor."  *Randall v.*

*Scott*, 610 F.3d 701, 705 (11th Cir. 2010).

      Appellants' complaints are identical, save for their different accounts of each

Appellant's conviction and litigation history.[13]  They are indistinguishable with

respect to the Eighth Amendment claim now before us.  Hence, for convenience,

we refer only to Geoffrey West's complaint ("the Complaint").  The Complaint

challenges the Eighth Amendment sufficiency of Alabama's protocol under the

controlling standard set forth by the Supreme Court in *Baze v. Rees*, 553 U.S. 35,

128 S. Ct. 1520 (2008) (plurality opinion).  That standard requires a prisoner to

plead and prove that the challenged execution protocol creates a "substantial risk

of serious harm," such that prison officials cannot argue "they were subjectively

blameless for purposes of the Eighth Amendment."  *Id.* at 50, 128 S. Ct. at 1531

(quotations omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842, 846, and n.

---

[13] We also note that Appellants' complaints are identical in another respect.  In *Frazier*,
we made clear that the parties' pleadings came before us in considerable disarray.  2017 WL
3815265, at *30–31.  The pleadings do not fare much better in this case.  In addition to including
factual allegations its drafter apparently thought would be probative of his Eighth Amendment
claim at trial, but that are unnecessary to establish an Eighth Amendment claim sufficient to
withstand a motion to dismiss, each complaint includes nine exhibits containing over 100 pages
of extraneous information.  These exhibits include, among other things, a copy of a motion filed
in the Alabama Supreme Court, an expert witness report, an email from an official with the Ohio
Department of Rehabilitation and Correction to an official at the Food and Drug Administration,
and execution procedures promulgated by the Arizona Department of Correction.

9, 114 S. Ct. 1970 (1994)). Under the standard, a "substantial risk of serious harm" does not include any possibility the prisoner will suffer pain; rather, "the conditions presenting the risk must be sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers." *Id.* at 49–50, 128 S. Ct. at 1530–31 (quotations omitted) (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 34–35, 113 S. Ct. 2475 (1993)). Additionally, the challenger must also prove the existence of an "alternative procedure" that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain. *Id.* at 52, 128 S. Ct. at 1532.

The Complaint alleges that the third drug, potassium chloride, "indisputably causes an unconstitutional level of pain" when a prisoner is not "in a deep level of anesthesia" before potassium chloride is administered. And, Appellants allege, midazolam cannot be trusted to put prisoners in such a sedated state. They argue that midazolam, as "a sedative and not an analgesic," would likely render a prisoner "unable to respond to . . . the ADOC's consciousness check" yet would do little or nothing to prevent the prisoner from "feel[ing] the excruciating effects of the second and third drugs." Thus, with respect to *Baze*'s "substantial risk of serious harm" prong, Appellants argue that using midazolam as the first drug creates a serious risk that they will be subjected to the intolerable pain the administration of rocuronium bromide and potassium chloride will cause.

15

With respect to the requirement that they plead and prove the existence of a readily available and implementable alternative protocol that would significantly reduce that risk, they argue that "a single bolus of [compounded] pentobarbital . . . is the most common method of execution in the United States"; thus, it is "read[ily] available, and would entirely reduce the risk of pain associated with administering the paralytic and potassium chloride, because those drugs would not be used." Alternatively, they argue that sodium thiopental is available and "would cause death without need of a paralytic or potassium chloride." Finally, as a third alternative, Appellants argue that "a 500mg dose of midazolam will likely cause death in under an hour," and, as evidenced by its adoption of midazolam as the first drug in its protocol, the ADOC "can obtain midazolam."[14]

Here, if proven true, the facts Appellants allege would satisfy *Baze*'s two-prong standard. First, if midazolam fails to render them insensate, the severe pain caused by the second and third drugs would represent the "substantial risk of serious harm" the first prong contemplates. *Baze*, 553 U.S. at 53, 128 S. Ct. at 1533 (noting "[i]t is uncontested that" failure to "render the prisoner unconscious"

---

[14] The ADOC argues that this Court must, in this appeal, adopt the District Court's findings regarding the "true nature" of Smith's complaint. But if we were required to adopt those findings from *Smith*, we would also be required to adopt the District Court's findings regarding a single-bolus midazolam protocol's availability and effectiveness as an alternative execution method. In the order immediately preceding the dispositive order that dismissed Smith's complaint, the Court observed that "the parties all agree that (1) midazolam is available, (2) it is feasible, (3) it is readily implementable, and (4) it is not risky with regard to unnecessary pain and suffering." Simply put, the ADOC cannot have it both ways with respect to *Smith*'s relevance to this appeal.

16

would create "a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and pain from the injection of potassium chloride"). Second, accepting their allegations as true for purposes of the motion to dismiss, each of Appellants' three proposed alternatives would be obtainable by the ADOC and would completely eliminate the risk of suffocation and pain the second and third drugs create. This would satisfy *Baze*'s second prong. Thus, the Complaint states a claim sufficient to survive a Rule 12(b)(6) motion to dismiss.

That, however, is not the end of the inquiry. Nor is it the basis upon which the District Court dismissed Appellants' cases. A complaint must also be dismissed if it is time-barred under the applicable statute of limitations. Claims like Appellants' brought under 42 U.S.C. § 1983 are subject to "the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). Thus, in this case, Alabama's two-year limitations period for personal injury actions applies. *See* Ala. Code. § 6-2-38(j) ("All actions for any injury to the person . . . of another . . . must be brought within two years."); *McNair*, 515 F.3d at 1173 (explaining that an Eighth Amendment method-of-execution claim brought by a death row inmate in Alabama under § 1983 is subject to a "governing limitations period [of] two years").

17

An Eighth Amendment method-of-execution claim "accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." *McNair*, 515 F.3d at 1174.  Although we have never articulated what precisely constitutes a "substantial change" in a given execution protocol, we have explained that a change must "significantly alter the method of execution" to qualify as "substantial." *Gissendaner v. Comm'r, Ga. Dept. of Corr.*, 779 F.3d 1275, 1282 (11th Cir. 2015) (per curiam).  Determining whether a significant alteration to a state's execution protocol has been made is "a fact-dependent inquiry" that requires careful consideration of the specific allegations and evidence presented by the plaintiff in each case. *Arthur v. Thomas*, 674 F.3d 1257, 1260 (11th Cir. 2012) (per curiam).

Thus, we must decide whether the District Court erred in concluding that Appellants' challenge was actually a "general challenge" to the State's three-drug lethal injection protocol, notwithstanding which drug is used as the first drug.  All Appellants but Borden filed their complaints in April 2016; Borden filed his complaint on September 7, 2016. Alabama substituted midazolam for pentobarbital on September 10, 2014, while the State adopted lethal injection, by way of a three-drug protocol, on July 1, 2002.  Hence, if Appellants challenge the State's three-drug protocol generally, the Complaint is barred.  On the other hand, if they

18

"really" challenge only the use of midazolam as the first drug, it isn't.  We thus review the Complaint to determine the "true" nature of Appellants' challenge.

We first observe that we are not constrained to follow *Smith*'s acceptance of the ADOC's interpretation of the Complaint as a general challenge to the State's three-drug protocol.  We explain above and in *Frazier* why the law-of-the-case doctrine is inapplicable in this instance.  *Smith* fares no better as pure precedent. The case was not published and therefore is not binding precedent.  *See, e.g.*, *United States v. Manella*, 86 F.3d 201, 204 (11th Cir. 1996) (per curiam).

Moreover, although an unpublished opinion may serve as persuasive authority, we are not persuaded to give our imprimatur to the proposition that a plaintiff is required to respond to an adversary's interpretation of his complaint in order to survive a Rule 12 (b)(6) motion to dismiss when the complaint plainly alleges a claim for relief in accordance with Federal Rule of Civil Procedure 8(a).

In *Smith*, although Smith's complaint focused consistently on midazolam's alleged ineffectiveness, the ADOC argued his challenge bespoke an ulterior motive: to renew an otherwise time-barred "general challenge" to Alabama's three-drug protocol.  The ADOC argued,

> Plaintiffs make no secret that their complaints seek to address the
> dangers created by the risk of using three-drug protocols, not the
> dangers of midazolam.  Specifically, Plaintiffs seek to end Alabama's
> use of paralytic and cardiac-arresting agents, regardless of the first
> drug administered during the lethal injection process. . . . [I]t is clear

from the beginning to the end of their complaint, Plaintiffs' challenge concerns a three-drug protocol generally, not midazolam specifically.

The District Court accepted that argument, basing its adoption of the ADOC's reading of Smith's complaint on the fact that all of Smith's proposed alternatives consisted of single-drug protocols, instead of the State's prior three-drug protocols using either sodium thiopental or pentobarbital.  In its view, those "one-drug protocol proposals strip[ped] away the veneer from Smith's claim" to reveal "its true identity."  *Smith*, 221 F. Supp. at 1334.  The Court explained,

> The fact that Smith does not propose that the ADOC be required to return to its use of sodium thiopental or pentobarbital as the first drug administered in a three-drug protocol is significant because it reveals the true nature of his Eighth Amendment claim: Smith is challenging the three-drug, lethal-injection execution protocol, regardless of the first drug administered, as being unconstitutional.  In effect, he is challenging the last two drugs, not the first: not sodium thiopental, not pentobarbital, not midazolam.

*Id.* at 1333.  Thus, the Court concluded, Smith's "midazolam argument is a smokescreen, diverting attention from the fact that his Eighth Amendment claim challenging the ADOC's three-drug, lethal-injection protocol is time-barred."  *Id.*

Next, the District Court observed that Smith "d[id] not address Defendants' contention that his claim, in actuality, is a challenge against the use of any three-drug execution protocol."  *Id.* at 1334.  Accordingly, the Court concluded that Smith's true claim was such a challenge, which "accrued long ago" and was long since "time-barred."  *Id.*

By disregarding the allegations that appeared on the face of Smith's complaint and instead basing its dismissal on only the sufficiency of what it and the ADOC deemed "the true nature" of his complaint, the District Court effectively reshaped Smith's complaint into a different claim altogether.  It did so despite the fact that the original complaint directly challenged midazolam's ability to render the prisoner insensate prior to administration of the second and third drugs in the protocol.  Then, the Court treated what it viewed as a failure by Smith to adequately respond to those arguments as a default on that issue.  Such a response is not required to survive a Rule 12(b)(6) motion to dismiss.  Rule 8, which sets forth the requirements of an adequate pleading, requires in relevant part that a sufficient complaint must contain "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled for relief," and "a demand for relief sought."  Fed. R. Civ. P. 8(a).  What it does not require is a response by the pleader to arguments made by an opposing party based on that party's subjective interpretation of the pleader's complaint.

Thus, we review Appellants' Complaint anew.  And we are convinced by that review that the Complaint in fact challenges the State's substitution of midazolam for pentobarbital as the first drug in its three-drug protocol.  From cover to cover, the Complaint trains specifically on midazolam's alleged inability

to properly function as an anesthetic.  In the Complaint's second paragraph,

Appellants allege that midazolam is "a sedative with no analgesic properties" that

will "create[] an illusion of adequate anesthesia."  Appellants go on to allege that

"midazolam[] is a benzodiazepine, not a barbiturate like pentobarbital"; as such,

"[m]idazolam is not designed for use as the sole drug in anesthesia, but as an

anesthetic adjunct."  The Complaint then sums up its allegations concerning

midazolam's ineffectiveness thusly:

> Because of the way midazolam works in the human body, it could
> sedate an individual to the point where he was incapable of
> communicating that he was in pain while doing nothing to suppress
> the experience of pain.  Because midazolam is a sedative and not an
> analgesic, there is a high likelihood that an inmate who receives a
> high dose of midazolam would be unable to respond to the noxious
> stimuli that constitute the ADOC's consciousness check, but would
> still feel the excruciating effects of the second and third drugs.

Fairly read, then, the crux of Appellants' Eighth Amendment claim is simply

that "[u]sing midazolam in conjunction with a paralytic and potassium chloride

violates *Baze*, *Furman*, and any evolving standards of decency."  Put simply, the

challenge at issue was a specific challenge to the ADOC's use of midazolam in its

execution protocol.

The alternative execution methods Appellants proffered in the Complaint do

not change the specific nature of the challenge.  The ADOC argues that because all

three of Appellants' proposed alternatives involve single-drug protocols, their

specific challenge to midazolam is in truth a general attack on Alabama's

22

continued use of its three-drug lethal injection protocol.  The logical conclusion of

this argument is that a prisoner challenging the use of a particular drug in a three-

drug protocol must propose only a procedure keeping the three-drug protocol intact

in order to avoid having his complaint styled as a "general challenge."  The District

Court agreed, stating, "to comply with *Glossip*, [Smith] would be required to

propose an alternative drug(s), such as sodium thiopental or pentobarbital, to be

used as the first drug in the ADOC's three-drug protocol, *essentially a return to the

ADOC's pre-midazolam protocol*."  *Smith*, 221 F. Supp. at 1334 (emphasis added).

Not so.  A prisoner must meet two prongs.  First, he must show that (1) the

challenged protocol presents a "substantial risk of serious harm."  *Baze*, 553 U.S.

at 50, 128 S. Ct. at 1531 (quotations omitted) (quoting *Farmer*, 511 U.S. at 842,

846, and n. 9, 114 S. Ct. at 1970).  Second, he must show that the alternatives he

has proffered will "significantly reduce" that risk and are "feasible" and "readily

implement[able]."  *Id.* at 52, 128 S. Ct. at 1532.  Whether those alternatives consist

of one drug, two drugs, three drugs, or no drugs is irrelevant.  And where, as here,

the statute of limitations would bar a general challenge to a three-drug lethal

injection protocol, the prisoner must additionally show that the substitution of one

drug for another represents a "substantial change" in protocol.  *Gissendaner*, 779

F.3d at 1282.  Nothing more or less is required.  That the challenger's proposed

alternatives all employ a single-drug protocol does not transform a specific

challenge to one drug's use in a three-drug protocol into a general challenge to three-drug protocols in all their various and sundry combinations.

Because the Complaint alleges facts that, if proven true, would satisfy both prongs of the *Baze* standard, we hold that the District Court erred in concluding that Appellants' claim was time-barred.

### III.

Accordingly, we reverse the District Court's dismissal of Appellants' complaint. The case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.