IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CAREY DALE GRAYSON, | ) | CASE NO. 2:12-CV-0316-WKW |
| DEMETRIUS FRAZIER, | ) | CASE NO. 2:13-CV-0781-WKW |
| DAVID LEE ROBERTS, | ) | CASE NO. 2:14-CV-1028-WKW |
| ROBIN DION MYERS, | ) | CASE NO. 2:14-CV-1029-WKW |
| GREGORY HUNT, | ) | CASE NO. 2:14-CV-1030-WKW |
| GEOFFREY TODD WEST, | ) | CASE NO. 2:16-CV-0270-WKW |
| TORREY TWANE McNABB, | ) | CASE NO. 2:16-CV-0284-WKW |
| RONALD BERT SMITH, | ) | CASE NO. 2:16-CV-0269-WKW |
| CHARLES LEE BURTON, | ) | CASE NO. 2:16-CV-0267-WKW |
| ROBERT BRYANT MELSON, | ) | CASE NO. 2:16-CV-0268-WKW |
| JEFFERY LYNN BORDEN, | ) | CASE NO. 2:16-CV-0733-WKW |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFERSON S. DUNN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Torrey Twane McNabb is scheduled to be executed by the State of
Alabama on October 19, 2017, by a three-drug lethal injection protocol, with
midazolam as the first drug administered. On October 11, 2017, at 5:52 p.m., he filed
an Emergency Motion for Stay of Execution (Doc. # 307) requesting a stay of
execution on traditional grounds. The State responded in opposition to McNabb's
motion on October 13, 2017 (Doc. # 310). The motion was argued, without

additional evidence being offered by either side, on October 13, 2017. At oral argument, McNabb argued in the alternative for an All Writs Act injunction. *See* 28 U.S.C. § 1651(a).

Because McNabb's circumstances and procedural posture are not materially different from those of Plaintiff Jeffery Lynn Borden, whose execution was stayed last week (*see* Doc. # 302), and in view of the Eleventh Circuit's mandates and expressed view of an All Writs Act injunction, McNabb's motion for a stay of execution will be GRANTED as an All Writs Act injunction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The factual background and procedural history of this case have been thoroughly recounted in the prior opinions of this court and the Eleventh Circuit Court of Appeals.  Following is a brief summary relevant to this opinion.

McNabb is an Alabama inmate sentenced to death. His execution is scheduled for Thursday, October 19, 2017, at 6:00 p.m., Central Daylight Time. On April 19, 2016, McNabb filed a complaint under 42 U.S.C. § 1983 challenging the constitutionality of Alabama's method-of-execution under the First, Eighth, and Fourteenth Amendments to the United States Constitution. *See McNabb v. Dunn*, No. 2:16-cv-0284-WKW (M.D. Ala. 2016) (Doc. # 1). Because McNabb's complaint contained claims and factual allegations virtually identical to other cases that collectively have been styled the Midazolam Litigation, his case was

2

consolidated with a group of cases in the Midazolam Litigation.[1] S*ee Grayson, et al. v. Dunn*, No. 2:12-cv-0316-WKW (M.D. Ala. 2012). On March 31, 2017, this court granted Defendants' Rule 12(b)(6) motion and dismissed the complaints filed by McNabb and his co-plaintiffs, Burton, Melson, West, and Borden. (Doc. # 240.)

Plaintiffs appealed. On September 6, 2017, the Eleventh Circuit reversed the dismissal and remanded for further proceedings, holding that, "[b]ecause the Complaint alleges facts that, if proven true, would satisfy both prongs of the *Baze* standard, we hold that the District Court erred in concluding that Appellants' claim was time-barred."[2] *Burton v. Warden,* No. 17-11536, slip op. at 24 (11th Cir. Sept. 6, 2017).  The mandate issued October 5, 2017.  (Docs. # 293, 299.)

Prior to issuance of the mandate, on September 15, 2017, Borden and McNabb each filed an emergency motion in the Eleventh Circuit to stay their executions scheduled for October 5 and October 19, respectively.  On September 29, 2017, the

---

[1]  All plaintiffs in the Midazolam Litigation are death-row inmates who are challenging the ADOC's use of midazolam in the lethal-injection execution protocol as violating the Eighth Amendment. Not all plaintiffs in the Midazolam Litigation have raised the same claims; however, McNabb's complaint is a carbon copy of the claims asserted in the complaints filed by Charles Lee Burton, Robert Bryant Melson, Geoffrey Todd West, and Jeffery Lynn Borden. Melson was executed June 8, 2017.

[2]  Nearly a week earlier, on September 1, 2017, the Eleventh Circuit vacated a grant of summary judgment to the Defendants in five other Midazolam Litigation cases and remanded for trial because there was a dispute of material fact. *See Grayson v. Warden*, No. 16-16876, slip op at 8 (11th Cir. Sept. 1, 2017) ("After hearing from the parties in oral argument and considering their briefs, we conclude that genuine issues of material fact preclude summary judgment. . . . We accordingly vacate the District Court's judgment and remand for further proceedings.")

Eleventh Circuit granted Borden's emergency motion to stay his execution, rather than require Borden to seek relief in the district court. The Eleventh Circuit reasoned that, because his scheduled execution was to occur the same date the mandate was to issue, the district court would not have time to consider a motion to stay.[3] However, the Eleventh Circuit denied McNabb's emergency motion to stay his execution because he would have time between issuance of the mandate on October 5 and his execution date, October 19, to seek relief in the district court and obtain a ruling. He did that, and this is the ruling.

The Circuit Court went further in its order denying McNabb a stay of execution, however:

> If Mr. McNabb presents the District Court with an All Writs Act injunction request, he "must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior." *Id.* at 1099-1100. *In our view he clearly could meet this requirement, as his impending execution would directly threaten the District Court's resolution of his § 1983 claim.*

*Burton v. Warden*, No. 17-11536, slip op. at 5 (11th Cir. Sept. 29, 2017) (emphasis added).

The foregoing reveals two differences between McNabb's circumstances and those of Borden last week. First, Borden's mandate and execution date were

---

[3]  The Supreme Court vacated the Circuit's All Writ's Act stay in Borden's case, without comment or reasoning, the day before his scheduled execution. *See Dunn, Com'r, Ala. Dep't of Corr. v. Borden*, 17A360 (U. S. Oct. 4, 2017).

scheduled for the same day, leaving essentially no time for the district court to consider his motion to stay execution; McNabb had 14 days between his mandate and execution. Second, the Circuit said that McNabb would be entitled to an All Writs Act injunction under these circumstances. That finding, or directive, or holding, has not been disturbed. Otherwise, the circumstances of Borden and McNabb are identical; the issues match perfectly; and the Eleventh Circuit has mandated litigation on the merits of those issues. Borden was granted an injunction by this court staying his execution, and the State did not appeal. Borden and McNabb thus are very similarly situated legally.

## II. STANDARD OF REVIEW

This opinion addresses solely McNabb's motion to stay his execution, under traditional considerations and under the All Writs Act.

Although the U. S. Supreme Court has held that a death row inmate may challenge the constitutionality of execution methods through a 42 U.S.C. § 1983 action, a stay "is not available as a matter of right," even where execution is imminent. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). Rather, "a stay of execution is an equitable remedy[,]" and "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.*; *see also Thompson v. Wainwright*, 714 F.2d 1495, 1506 (11th Cir. 1983) ("Each delay, for its span, is a commutation of a death sentence to one of

imprisonment."). Additionally, not only the state, but also the "victims of crime have an important interest in the timely enforcement of a sentence." *Hill*, 547 U. S. at 584.

A motion for a traditional stay filed by a death row inmate who challenges the method of his execution is treated the same as any other motion for a stay. Hence, a death row inmate receives no preferential treatment by his filing a motion to stay, and all requirements for a stay must be satisfied. *Hill*, 547 U. S. at 584. The requirements mirror those applicable to obtaining injunctive relief. *Grayson v. Allen*, 491 F.3d 1318, 1322 (11th Cir. 2007) ("The equitable principles at issue when inmates facing imminent execution delay in raising their § 1983 method-of-execution challenges are equally applicable to requests for both stays and injunctive relief."). This means that before a court can issue a stay, it must consider whether the movant has shown "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). *See also Hill*, 547 U. S. at 584 Further, the movant must clearly carry the burden of persuasion in order for the court to grant a stay. *Id.*

Finally, when a motion for a stay of execution is filed on the eve of the execution, "the extent to which the inmate has delayed unnecessarily in bringing the claim" must be considered. *Nelson v. Campbell*, 541 U. S. 637, 649 (2004). A "strong equitable presumption" applies "against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Hill*, 547 U. S. at 584 (quoting *Nelson*, 541 U. S. at 650); *see also Gomez v. U. S. Dist. Court for N. Dist. of Calif.*, 503 U. S. 653, 654 (1992) (*per curiam*) (noting that the "last-minute nature of an application" or an applicant's "attempt at manipulation" of the judicial process may warrant the denial of a stay).

## III. ANALYSIS

### A.   <u>Unnecessary Delay</u>

As an initial matter, the Eleventh Circuit has instructed this court to "consider that Mr. McNabb was not responsible for the delay in bringing the litigation of his claim to its present posture . . . ." (Doc. # 307-1, at 6.) Based on the Circuit's instructions, and its statement that McNabb's "motion to enjoin [his] . . . execution . . . could hardly be described as 'dilatory,'" *id*., the present exigency is not due to McNabb's actions or lack thereof.[4]   This court agrees.   Thus, this analysis will

---

[4] McNabb's emergency motion to stay was filed seven days after the mandate issued. The length of this delay is insufficient to imply an attempt at manipulation of the process in view of the unequivocal mandate of the Eleventh Circuit and the unique posture of this case.

proceed *without* the strong equitable presumption against entry of a stay because inexcusable delay is not attributable to McNabb.

## B.   Substantial Likelihood of Success on the Merits

Like Borden last week, the major weakness in McNabb's motion lies in his burden to demonstrate a substantial likelihood of success on the merits that "the challenged method of execution presents a substantial risk of serious harm" and that there is "an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." (Doc. # 289, at 7 (citing *Baze v. Rees*, 553 U. S. 35 (2008) (internal quotation marks omitted)).) As to the first prong, McNabb points to the expert report of Michael Froelich, M.D., M.S., as evidence that midazolam does not relieve pain and can enhance the perception of pain. (*See* Doc. # 307-2.) At best, that evidence establishes a dispute of fact on the first *Baze* prong.

As to the second prong, McNabb points to evidence tending to establish that pentobarbital, sodium thiopental, and a single dose of midazolam are viable alternative methods of execution that would reduce a substantial risk of severe pain. He relies, for example, on the deposition testimony of Dr. Daniel Buffington, who opined on the availability of compounded pentobarbital. (Doc. # 307-4.) And the Eleventh Circuit, writing about the availability of pentobarbital for executions, has highlighted the testimony of Gaylen M. Zenter, Ph.D., that because "pentobarbital

sodium for injection is listed in the FDA Orange Book, a publication containing all approved drugs in the United States, and because no active patents covered the product, anyone who has the ingredients can make pentobarbital sodium." (Doc. # 289, at 26 (internal quotation marks omitted).) In addition to this evidence, the fact of dozens of executions in other states using compounded pentobarbital gives the State much to explain,[5] at least from the vantage of the likelihood of success prong.

As for the first *Baze* prong, the State has highlighted other expert evidence to argue that McNabb cannot satisfy this prong, and that evidence has heft. For instance, the State cites Dr. Froelich's testimony that a 500-mg bolus of midazolam would put a person in a coma within five minutes or faster, and that "most people would probably say, well, I doubt a person who is rendered unconscious to that deep level would register pain in a meaningful fashion." (Doc. # 310, at 3-4) Moreover, Dr. Froelich admitted:

> Q. How would you define the term coma in a drug-induced context?
>
> A. A lack of responsiveness to arousal with a variety of intense stimuli.
>
> * * * * *
>
> Q. Would you agree or disagree with a definition of a coma as, quote, a state of unconsciousness where a person cannot be awakened, fails to respond normally to painful stimuli, light or

---

[5] Per the Death Penalty Information Center website, for the calendar years 2014 through 2017 to date, the states of Georgia, Missouri, and Texas, collectively, have conducted a total of seventy (70) executions using pentobarbital in a one-drug execution protocol. (*See* www.https://deathpenaltyinfo.org/executions-unitedstates (last visited Oct. 12, 2017).

sound, lacks a normal wake/sleep cycle, and does not initiate voluntary actions?

A. I would say that characterizes a coma.

Q. So part of the definition of a coma is that a person is so deeply unconscious that they cannot respond to noxious stimuli?

A. That's what I would understand, yes sir.

(Doc. # 310, at 7-8).  That testimony is from McNabb's own witness.

Considering all the evidence pointed to by both parties, the evidence is roughly in equipoise at this stage, which is to say, disputed. Plaintiff's burden for a traditional stay is much more rigorous. Without improperly prejudging the case, the disputed evidence does not demonstrate a substantial likelihood of success on the merits (or a "lesser showing" for which McNabb advocates). Thus, McNabb's motion for a traditional stay of execution is DENIED.

## C.   **All Writs Act Injunction**

The court finds itself between Scylla (the Eleventh Circuit's findings, observations and mandate) and Charybdis (McNabb's unsuccessful display of a substantial likelihood of success on the merits). McNabb alternatively requests the All Writs Act injunction strongly suggested by the Circuit Court. He relies on the Circuit Court's observation that the "Act is an extraordinary remedy that, under exceptional circumstances, provides a court broad authority to issue an appropriate writt.   Mr. McNabb has demonstrated that his case presents exceptional

circumstances." (Doc. # 307-1, at 3). There is support in the full record, and in the law of this case, for such a remedy.

First, the court adopts the Eleventh Circuit's reasoning in Borden's case (Doc. # 298-1) and the implied finding in McNabb's case (Doc. # 307, at 6-7), that the equities, in this emergency setting and in view of the issues to be resolved, favor McNabb. There is insufficient time prior to October 19 to address deliberatively the full panoply of weighty, life-involved issues presented. Because the prejudice to McNabb — his execution — is so great, the equities strongly outweigh the State's interest in executing McNabb as scheduled on October 19. Moreover, while the State and victims have, as always, a strong interest in seeing the State's judgments executed, the State has no protectable interest — nor does the public — in an unconstitutional execution.

Second, in denying without prejudice McNabb's emergency motion to stay, the Eleventh Circuit has conveyed clearly its expectation that, on remand, this court must *resolve* McNabb's § 1983 claim. It would be impracticable, more accurately, impossible, to give due consideration to and resolve the merits of McNabb's action prior to his October 19 execution date, given the extensive directives and mandates the Eleventh Circuit has issued in these consolidated actions. McNabb's and his co-plaintiffs' complaints are in shambles and must be repaired (*see* Doc. # 293, at 14 n.13; Doc. # 289, at 14–23, 75–77); the Answers are not much better (Doc. # 289, at

11

79–81); a "shaping [of] the issues for trial" must occur (Doc. # 289, at 80); and this court must perform "its gatekeeping function under *Daubert*" in the event an expert is subject to challenge (Doc. # 289, at 81).  In addition, of course, a trial date must be set; the issues must be tried; and a ruling on the merits must be entered.

A status conference was held prior to the argument on the motion for stay to address these and other matters. Every available resource is being devoted to the accomplishment of the mandate. But there are more matters than minutes in the day, and resolving the merits of McNabb's action in the days that now precede McNabb's scheduled execution would require nothing short of Circe's magical powers.

Third, another equitable consideration is at play.  Borden, in almost identical circumstances, received a stay of execution.  Defendants did not appeal, admittedly in part because of the late litigation hour.  The court, in equity and good conscience, cannot treat McNabb differently than Borden when the stakes are this high. There is no evidentiary justification for disparate treatment of McNabb.

The Eleventh Circuit has remanded McNabb's case for further proceedings. This court is not authorized to ignore those instructions, which still stand.  If McNabb is executed as scheduled, this court will be unable to comply with the mandate.  Given the unusual procedural posture of this case — like Borden's — preservation of this court's ability to comply with the clear directives of the Eleventh Circuit requires issuance of the alternative All Writs Act injunction as requested.

12

## IV. CONCLUSION

Accordingly, for the reasons stated above and those expressed by the Eleventh Circuit Court of Appeals, and in the face of a mandate, McNabb's Emergency Motion for a Stay of Execution (Doc. # 307), seeking injunctive relief under the traditional four-factor test is DENIED.  McNabb's alternative request for injunctive relief under the All Writs Act (Doc. # 307) is GRANTED.  McNabb's October 19, 2017 execution date is STAYED pending further proceedings in accordance with the Eleventh Circuit's instructions to the district court.

DONE this 16th day of October, 2017.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE